**Van Phi NGUYEN, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–97–00582–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 25, 2000.

**610**

Donald R. Tonroy, Houston, for Appellant.

William Delmore, III, John B. Holmes, Houston, for State.

Panel consists of Justices COHEN, NUCHIA, and DUGGAN.*

## OPINION ON REHEARING

LEE DUGGAN, Jr., Justice (Retired).

A jury found appellant, Van Phi Nguyen, guilty of engaging in organized criminal activity and assessed punishment at

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas

at Houston, participating by assignment.

five years confinement and a $10,000 fine. We affirm.

In an opinion issued February 3, 2000, we sustained appellant's legal sufficiency point of error, reversed, and rendered a judgment of acquittal. On motion for rehearing, the State directed the Court to evidence in the record which, under *Nguyen v. State*, 1 S.W.3d 694 (Tex.Crim.App. 1999), shows legal sufficiency to sustain the conviction. Therefore, we grant the State's motion for rehearing, withdraw our opinion dated February 3, 2000, and issue this opinion in its stead.[1]

## Background

This case arises from an undercover investigation into the sale of stolen computer chips. James Klein, manager of corporate investigation at Compaq Computer Corporation, suspected that a former employee, Sabus Ramirez, stole computer memory chips from Compaq. Working with Houston Police Department investigators, Klein contacted Ramirez in August 1996 and offered to sell him stolen microchips. Ramirez agreed, and planned to buy 60 microchips for $9,000. The market value of the microchips at the time was $66,000.

The original sale scheduled between Klein and Ramirez did not take place. Ramirez called Klein two weeks later to set up a new sale because he said his buyer wanted more microchips. Klein agreed to sell 120 stolen microchips with 128 megabyte capacity for $24,000. The market value of the microchips at the time was $103,000. Klein and Ramirez agreed that Klein's girlfriend would deliver the chips to Ramirez's apartment on September 17, 1996. Ramirez told Klein that his "money guy" would be at the apartment for the exchange.

Klein's "girlfriend" was Liz Mihalco, an undercover police officer who wore a concealed transmitting device. Ramirez came to Mihalco's vehicle in the apartment complex's parking lot to view the chips, which she told him were stolen. Ramirez then gave her $24,000 in cash. A second man, Ralph Nino, arrived to assist in unloading the boxes of memory chips. When the police moved in to arrest Ramirez and Nino, Nino fled and jumped over a fence. He was arrested about two blocks away.

Chris Green, who was also arrested at Ramirez's apartment, agreed to cooperate with the police and led them to appellant, the ultimate purchaser of the chips. In a recorded conversation, Green called appellant, who was waiting for the microchips. Green told appellant, "They don't care if it's stolen, they want more money"; appellant responded that he did not have any more money. Ten to 15 minutes later, in an unrecorded conversation, appellant called Green and told him to come to his place of business.

Green wore a concealed transmitter and drove his own vehicle to appellant's business. Green arrived first, and appellant soon arrived with his wife. Appellant told Green to drive to the parking lot of a nearby store. There, Green gave appellant a bag containing some of the microchips. The police approached appellant's car to arrest him, but appellant fled. A chase ensued, and appellant was arrested. During the chase, appellant's wife threw the bag of computer chips out of the car, and the police recovered the bag.

## Expert Testimony

■ In issue one, appellant argues the trial court erred by excluding his expert witness testimony concerning the value of the computer microchips. The State responds that the trial court acted within its discretion to exclude this evidence at the time it was offered. We agree with the State.

Scott Satterwhite, a computer expert, was the first witness to testify for the

---

1. We note that, on March 2, 2000, we ordered appellant to file, within 14 days, a response to the State's motion for rehearing. To date, we have received no response to the motion or to the order.

defense. Appellant asked Satterwhite the price of a 32 megabyte chip as of September 1996. The State objected on the grounds that such testimony was not relevant to the value of the 128 megabyte Compaq computer chips in question. The trial court sustained the objection.

Satterwhite testified outside the presence of the jury. The State had already introduced the idea to the jury that appellant knew the chips were stolen because they were steeply underpriced. Appellant's counsel argued that appellant would testify that he thought he was buying used chips at market value, and the value of used chips was therefore relevant. The trial court ruled as follows:

> Trial court: Well okay I guess you are putting the cart before the horse because what was in your client's mind hadn't [sic] come out yet and *this is only conditionally relevant, if at all* and no you can't make representations that your client has to testify because he doesn't have to testify.
>
> Defense counsel: Well fair enough.
>
> Trial court: So *at this point* I don't think it's relevant. I'll sustain the State's objection.

Thus, the trial court sustained the State's objection but advised defense counsel that testimony concerning the value of the chips would be relevant once the defense established appellant's state of mind. Although appellant later testified, he did not recall Satterwhite to testify to the value of the chips.

We review a trial court's decision to admit or exclude evidence on an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex.Crim. App.1990). Under Rule of Evidence 104(b), evidence that is relevant only upon fulfillment of a condition of fact may be admitted either upon or subject to the introduction of evidence that establishes that fact. Thus, the trial court may (1) admit the conditionally relevant testimony, with the understanding that it may be struck if its relevance is not established by later evidence; or (2) require a showing of relevance before introduction of the conditionally relevant testimony. *See* Tex.R. Evid. 104(b).

Here, the trial court acted on the second allowable option, and required a showing of relevance before the testimony would be admitted. Once appellant's state of mind as to the value of the chips was established, Satterwhite's testimony would have been admissible. However, after appellant testified, the defense did not again call Satterwhite to testify to the chips' value. Thus, the trial court did not abuse its discretion.

We overrule appellant's issue one.

### Legal and Factual Sufficiency

In issues two and three, appellant argues the evidence was legally and factually insufficient, in two ways, to prove he participated in a criminal combination with Ramirez, Green, Nino, and Thi Nga Nguyen (appellant's wife), as alleged in the indictment. When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Short v. State*, 874 S.W.2d 666, 667 (Tex.Crim.App.1994). We measure the sufficiency of the evidence against the "hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex. Crim.App.1997). The hypothetically correct jury charge for a case is one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried, without regard to the specific wording of the jury charge actually given. *Id.*

Appellant first argues that the evidence shows only that he entered into an agreement with Green.

## A. Criminal Combination

The language of the charge was identical to the language of the indictment, which alleged appellant intended to establish or participate in a criminal combination that included *four* other persons (Ramirez, Green, Nino, and appellant's wife, Thi Nga Nguyen). A combination is defined as "three or more persons who collaborate in carrying on criminal activities. Tex. Penal Code § 71.01(a). Thus, the jury charge increased the State's burden of proof regarding the number of persons in the combination.

■ The hypothetically correct jury charge should have required a finding that the combination consisted of appellant and *at least two of the four* individuals listed in the indictment. *See Jones v. State*, 907 S.W.2d 850, 852–54 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). When we measure the sufficiency of the evidence against the hypothetically correct charge, we find it was sufficient to sustain the conviction.

■ Appellant concedes he sought Green's help in purchasing the computer chips. It was uncontroverted that appellant knew Green was not the ultimate source of the chips, and that Green's "friends" were involved in the purchase. Appellant alluded to Green's friends in a tape-recorded conversation with Green. He also testified that he thought Green's friends were trying to steal the money back in the parking lot when the police approached him. The fact that appellant may not have known the specific identities of Green's friends is not important because the participants in a combination need not know each other's identity. *See* Tex. Penal Code § 71.01(a) (stating participants in a combination need not know the identities of all the other participants; it is enough to know of their existence). Ramirez was the contact who located a buyer for the chips; Nino was present to help unload the chips when they were delivered; Green was repeatedly referred to as the "money man"; and Green led the police to appel-

lant, who was the financier of the operation. It was reasonable for the jury to conclude the men were working together in a joint effort to buy stolen property, and that appellant must have been aware that he was part of a combination with at least two more participants.

The evidence was legally and factually sufficient for a rational jury to have concluded appellant was part of a combination that included at least two others, and the jury's determination that appellant was part of a combination was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996).

Appellant next argues that the evidence was legally and factually insufficient because a combination cannot be based upon an agreement to commit a single criminal offense. He argues the State must show he intended to establish, maintain, or participate in a group that would work in a *continuing* course of criminal activities.

## B. Single Criminal Offense

Appellant argues (1) that one lone act of stealing computer chips cannot support a conviction for organized criminal activity; and (2) there is no evidence that he intended to establish a combination to work in a continuing course of criminal conduct. This point is governed by the recent Court of Criminal Appeals decision in *Nguyen*, 1 S.W.3d at 694.

A person commits the offense of engaging in organized criminal activity if, "with the intent to establish, maintain, or participate in a *combination*... he commits ... one or more of" the offenses listed in Penal Code § 71.02(a)(1), including theft. Tex. Penal Code § 71.02(a). A "combination" is defined as "three or more people who collaborate in carrying on criminal activities." Tex. Penal Code § 71.01(a). In *Nguyen*, the court held:

[T]he phrase "collaborate in carrying on criminal activities" cannot be understood to include an agreement to jointly com-

mit a single crime; the State must prove more than that the [defendant] committed or conspired to commit one of the enumerated offenses with two or more people.

1 S.W.3d at 695.

■■■■ Thus, under *Nguyen*, to establish that a defendant engaged in organized criminal activity, the State must prove more than an agreement to jointly commit a single crime. *Id.* While the State is not required to prove the defendant committed more than one criminal offense, it must prove "continuity," or that the defendant intended to establish, maintain, or participate in a group of three or more, in which the members intend to work together in a *continuing* course of criminal activities. *Id.* Therefore, if the evidence indicates that (1) a defendant's accomplices had engaged in ongoing multiple criminal activities, including a prior agreement to purchase supposedly stolen computer memory chips, and (2) a defendant agrees to join the existing organized crime unit, knowing that it has committed or will commit multiple criminal activities, he falls within the definition of engaging in organized criminal activity, even if he is caught after committing a single criminal offense.

■■■■ Viewing the evidence in the light most favorable to the verdict, we conclude the evidence was legally sufficient for a rational juror to conclude that appellant *participated in a combination with* Ramirez and Green or others in a *continuing* course of criminal conduct. The evidence showed that thefts of Compaq's computer chips had been occurring for some time, that Ramirez was suspected of using his position as an employee in the distribution center to commit those thefts, and that an intended first sale fell through.

In our original opinion, we stated there was no evidence that connected the appellant to the planned first sale. However, the State argues that Ramirez made statements to Klein that indicate appellant was the intended buyer in *both* the contemplat-ed transaction that fell through, and in the transaction that resulted in this conviction. The State relies on the following, unobjected to, testimony from Klein to make this connection:

Q: Okay. Would you tell the jury about your conversation with Sonny Ramirez [the ringleader] that occurred on September 7?

A: Basically had a short conversation. Just asked me how things are going, asked me if I had anymore and which I told him I believe at the time I said I've got one more box of the chips and I think he had asked what they were and I told him a hundred and twenty-eight MEGS. He then proceeded to tell me and I also confirmed through that conversation, I told him that I had sold the other stuff to my contact in Dallas then through further conversation he said well that the person that he's, the buyer, *the person that he sells it to was willing now to pay twelve thousand dollars for a box or for 3 boxes.* Before it was nine thousand and now it's twelve thousand, on the condition if we made it worthwhile and I could get 6 boxes so it would be 6 boxes for twenty-four thousand is what he was willing to pay me.

(Emphasis added).

The State argues we must infer appellant's intent from the circumstances of the case, and we must presume the trier of fact resolved any conflicting inferences in favor of the State. *See Salisbury v. State,* 867 S.W.2d 894, 896–97 (Tex.App.—Houston [14th Dist.] 1993, no pet.). We agree and conclude that this testimony established circumstances from which the jury could find that appellant intended to participate in what he knew to constitute a "combination," despite his lack of previous involvement in criminal offenses committed by members of the combination. This excerpt of Klein's testimony, along with the evidence previously discussed, was le-

gally sufficient to prove that appellant was a part of a "combination" under Penal Code section 71.01(a).

To contest factual sufficiency, appellant relies on the same alleged deficiencies in the State's proof that he used to argue the evidence was legally insufficient. He does not cite evidence contrary to the State's proof. Consequently, we hold that the evidence set out above is factually sufficient because the jury's finding that appellant was part of a combination was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Clewis*, 922 S.W.2d at 129.

We overrule appellant's issues two and three.

We affirm the judgment of the trial court.