**Thomas Henry GEMOETS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–97–00174–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 9, 2001.

2. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Arnold S. Cohn, Houston, David N. Anderson, for appellant.

William J. Delmore, III, Dist. Atty's Office, Harris County, Houston, for appellee.

Panel consists of Justices LEE, HUTSON–DUNN, and AMIDEI.*

## OPINION

MAURICE AMIDEI, Justice.

Thomas Henry Gemoets appeals his jury conviction for engaging in organized criminal activity by committing theft of over $200,000.00. Tex.Pen.Code Ann. § 71.02(a)(1) (Vernon 1994 & Supp.2000). The jury assessed his punishment at ten years' imprisonment and a $10,000.00 fine. In six issues, appellant contends: (1) and (2) the evidence is legally and factually insufficient to sustain his conviction; (3) the trial court unreasonably limited voir dire; (4) the trial court erred by commenting to the jury panel that they could consider appellant's failure to call witnesses on his behalf; (5) the trial court erroneously denied appellant's motion to quash the indictment; and (6) the trial court erroneously denied appellant's motion to sever. We affirm.

---

* Senior Justices Norman Lee and D. Camille Hutson–Dunn, and Former Justice Maurice Amidei sitting by assignment.

## BACKGROUND

Appellant was indicted for engaging in organized criminal activity by committing theft from five insurance companies of over $200,000.00 between October 9, 1993, and January 19, 1995. He was jointly tried with his codefendants Tan Kien Tu (Tu), Randy Jarnigan (Jarnigan), Alfonso Gonzalez (Gonzalez), and Leighann Phan (Phan). Tu, Jarnigan, and Gonzalez have also appealed their convictions to this Court, as follows: *Tan Kien Tu v. State,* C14–97–00436–CR, 2001 WL 893631 (Tex. App.—Houston Aug. 9, 2001); *Randy Jarnigan v. State,* 57 S.W.3d 76 (Tex.App. 2001); and *Alfonso Gonzalez v. State,* C14–97–00745–CR, 2001 WL 893699 (Tex. App.—Houston Aug. 9, 2001).

Tu owned two medical clinics where appellant and Gonzalez treated persons involved in staged automobile accidents. Jarnigan was an attorney who represented the persons involved in the staged automobile accidents. Jarnigan filed claims with the insurance companies, settled the claims, and deposited the settlement funds in his lawyer's trust account. Leighann Phan was an employee at one of the medical clinics. The trial, pretrial and post-trial hearings took over a month, and the combined trial produced a voluminous record consisting of twenty-two volumes of reporter's records, four volumes of clerk's records (for this appellant only), fifty-five volumes of exhibits, seven videotapes, and one audiotape.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant asserts that the evidence is legally insufficient to support his conviction because the State did not prove he participated in a combination or committed theft of over $200,000.00. As a subpoint to his first issue, appellant further contends the trial court erred by denying his motion for a directed verdict.

In his second issue, he contends that the same evidence is factually insufficient to sustain his conviction.

### Standard of Review

■ In regard to the trial court's denial of appellant's motion for an instructed verdict, it is well settled that a challenge to the ruling on a motion for instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction. If the evidence is sufficient to sustain the conviction, then the trial judge did not err in overruling the motion for instructed verdict. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990); *Sanders v. State,* 814 S.W.2d 784, 786 (Tex. App.—Houston [1st Dist.] 1991, no pet.).

■ In reviewing the legal sufficiency of the evidence, we consider all the evidence, both State and defense, in the light most favorable to the verdict. *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App. 1984); *Garrett v. State,* 851 S.W.2d 853, 857 (Tex.Crim.App.1993). In reviewing the sufficiency of the evidence in the light most favorable to the verdict or judgment, the appellate court is to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Ransom v. State,* 789 S.W.2d 572, 577 (Tex.Crim.App. 1989), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). This standard is applied to both direct and circumstantial evidence cases. *Chambers v. State,* 711 S.W.2d 240, 245 (Tex.Crim.App.1986). The jury is the exclusive judge of the facts, credibility of the witnesses, and the weight to be given to the evidence. *Chambers v. State,* 805 S.W.2d 459, 462 (Tex.Crim.App. 1991). In conducting this review, the appellate court is not to re-evaluate the weight and credibility of the evidence, but

act only to ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.1993); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988). In making this determination, the jury can infer knowledge and intent from the acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex.Crim.App.1982).

■■■ The sufficiency of the evidence to support a conviction should no longer be measured by the jury charge actually given but rather measured by the elements of the offense as defined by a hypothetically correct charge. *See Curry v. State*, 975 S.W.2d 629, 630 (Tex.Crim.App.1998). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

■■■ Under *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996), a court of appeals reviews the factual sufficiency of the evidence when properly raised after a determination that the evidence is legally sufficient. *Id.* In conducting a factual sufficiency review, the court of appeals views all the evidence without the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* In conducting a factual sufficiency review, the court of appeals reviews the fact finder's weighing of the evidence and is authorized to disagree with the fact finder's determination. This review, however, must be appropriately deferential so as to avoid an appellate court's substituting its judgment for that of the jury. If the court of appeals re-

verses on factual sufficiency grounds, it must detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient. The appropriate remedy on reversal is a remand for a new trial. *Id.*

■■■ A factual sufficiency review must be appropriately deferential so as to avoid the appellate court's substituting its own judgment for that of the fact finder. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997). This court's evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility of witness testimony. *Id.* The appellate court maintains this deference to the fact findings, by finding fault only when "the verdict is against the great weight of the evidence presented at trial so as to be clearly wrong and unjust." *Id.*

The court of criminal appeals has recently clarified *Clewis* addressing the factual sufficiency standard of review. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim.App.2000). The court of criminal appeals held, in pertinent part:

> We hold, therefore, that our opinion in *Clewis* is to be read as adopting the complete civil factual sufficiency formulation. Borrowing in part from Justice Vance's concurring opinion in *Mata v. State*, 939 S.W.2d 719, 729 (Tex.App.— Waco 1997, no pet.), the complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, al-

though adequate if taken alone, is greatly outweighed by contrary proof.

*Johnson,* 23 S.W.3d at 11.

### Discussion

Under issue one, appellant argues there is no evidence of his participation in a combination or that he committed theft of over $200,000.00. He argues that the state investigator, Bryan Vaclavik, testified that appellant was paid wages of $1,000.00 a week and received $53,000.00 over a 15 month period. Mr. Vaclavik did not testify that appellant received any money from the claims paid by the insurance companies.

### The evidence

Deputy Patberg worked undercover as a participant in a staged auto accident set up by Angie Mong Nguyen (Angie) in March 1994. Patberg stated the staged accidents were always at night and involved a "boy car" which was the car that was at fault, and was driven by a boy who was alone. The car that was struck by the boy car was called the "girl car" and had a minimum of four occupants. The accident was normally a "T-bone collision" [the boy car struck the girl car on the side of the car], and the driver of the boy car would admit fault to the investigating police officer. Other undercover officers videotaped the staged accident in which Patberg was in the girl car. After the accident, Patberg and the other occupants were paid a total of $600.00 for their participation. Patberg was directed to see appellant at his clinic and tell the receptionist that he was "sent there by Angie to see the doctor." Patberg filled out some forms and a technician took his blood pressure and x-rayed him. He saw appellant who asked him if he had been in an automobile accident. Appellant did not examine Patberg, ask him any questions, or prescribe any medication.

Peter Taormino testified that he was introduced to Angie Mong Nguyen by Steve Hai Ngoc Hoang. Angie asked Taormino if he would like to get his truck fixed and make some "quick money." She explained that they staged car wrecks and that he would have to go to a doctor and tell them he was injured. Taormino had been in a previous accident and his truck had been damaged by an uninsured driver. On October 9, 1993, Lawrence Grimes and Tammy Coorney went with Taormino and participated in a staged auto accident in which no new damage was done to Taormino's truck. The trio went to appellant's office, and Taormino told an Asian receptionist that Angie had sent them. Taormino signed several forms in blank, and all three "victims" went into appellant's office together. Appellant did not examine any of the trio; he *told* them where they were hurt, and marked an anatomical chart where they were hurt. Medical reports on Taormino signed by appellant were placed into evidence diagnosing his injuries as "acute post traumatic cervical strain; acute post traumatic lower thoracic vertebrae strain; contusion of arm without swelling or bruise; and contusion of hip without swelling or bruise." The total bill for appellant's services was $2,868.00. The record shows that State Farm paid Randy Jarnigan $4,500.00 to settle Taormino's bodily injury claim. Jarnigan received a like amount for the claims of Tammy Coorney and Lawrence Grimes. The total amount paid out by State Farm to the trio for all claims was $14,817.59. Taormino did not know Randy Jarnigan and never signed any checks that were made out to him.

Robert Bruso participated in a staged accident on January 18, 1994, with Deborah Pittman, Brenda Tindol, and Angela Scruggs. After the accident, Bruso and the other passengers went to appellant for

treatment. All four went into appellant's office where each of them told appellant of the injuries they had allegedly incurred in the accident. Appellant did not treat any of them. At Bruso's request, appellant gave him prescriptions for one hundred Vicodin tablets [narcotic analgesic containing hydrocodone and acetaminophen] and one hundred Soma tablets [muscle relaxant] with five refills. Bruso stated he was abusing drugs at the time, and appellant gave Bruso prescriptions for more Vicodin and Soma pills six or seven times. On his final visit, the receptionist told Bruso he could not see appellant. Bruso was upset and demanded to see the doctor. Appellant came out of his office and told Bruso that he could not see him anymore. Appellant was slurring his speech, and he fell down while trying to walk back to his office. On one of his earlier visits to appellant's office, appellant told Bruso that he was "at one time an established physician of great importance, a good doctor" and now "he was falsifying accidents, falsifying records." Appellant made a narrative medical report diagnosing Bruso's injuries as "acute post traumatic cervical strain, and contusion of low leg with swelling and bruise." Bruso's bill for over one year of "treatment" was $2,982.00. Farmers Insurance issued its settlement check to Bruso and his attorney, Jarnigan, for $5,500.00. Jarnigan deposited the check to his trust account, then issued his check to Bruso for $4,584.00. Someone then took Bruso's check to Lee Drive-in Grocery and cashed it. Bruso stated he was never contacted by Jarnigan, never signed the $5,500.00 check from Farmers Insurance, nor did he receive any money other than $600.00 cash from Angie. The total amount paid by the insurance companies to the four participants in this accident was $31,872.13.

Three more witnesses testified that they and others were involved in staged accidents, and that they all went to appellant as instructed by Angie. Michael Borque was in an accident on February 7, 1994, with Mary Ramirez (his wife), and Brenda Tindol. They all went to appellant's office, and none received any treatment. The insurance companies paid $30,591.69 to settle through Randy Jarnigan. None of these "victims" received any part of the settlement proceeds and were paid by Angie for their participation.

Melanie Williams testified that she, Chance Williams (her ex-husband), Steve Kirkland, and his wife, Margit, participated in a staged accident and were paid $500.00 apiece by Angie. Angie sent them to appellant's office where they signed numerous forms, and none of them were treated. The total amount paid by insurance companies for their injuries was $41,535.00.

Michael King, Gentleman John Clark, Steven Hale, Marshall Teutsch, and Wesley Henry participated in a staged accident on March 7, 1994. They received no treatment, and medical reports were falsified to support their claims. The insurance settlement for these five "victims" was $21,094.98.

The State proved up eight accidents to establish a total of $218,562.55 paid out by the insurance companies to settle fraudulent claims. Out of this amount, appellant's false medical reports for the participants he "treated" generated a total of $139,911.39 in settlement proceeds paid to attorneys hired by Tan Tu. The "victims" received no part of the settlement proceeds paid to the attorneys. All the participants were paid only a few hundred dollars cash for their participation in the automobile wrecks and visits to appellant. Someone other than the "victims" signed the insurance settlement checks and the subsequent checks made out to them by

the attorneys. The attorneys' checks to the participants were all cashed at Lee's Drive-in by unknown persons.

Oscar Phu was recruited and trained by Tan Tu to stage automobile accidents. Phu spoke several languages fluently allowing him to communicate with participants of various nationalities. He was granted immunity from prosecution in exchange for his testimony. He stated that insurance settlements were divided three ways: one-third to the "clients," one-third to the attorney, and one-third to the medical clinic. Of the one-third paid to the medical clinics, one-half of that amount was for certain medical providers/ doctors. Tan Tu received kickbacks from the clinics and the attorneys amounting to one-half of their respective one-third shares. Tan Tu operated on a cash basis, and he paid Lee's Drive-in a two percent check-cashing fee to cash checks. Tan Tu bought the Southwest Diagnostics Rehabilitation clinic from Henry Truong and employed appellant to work there as a doctor for $1,000.00 a week. Towards the end of 1993, Phu quit working for Tan Tu to work with Po Cheng in a similar business. Before he left, he trained Angie to stage automobile accidents.

Bryan Vaclavik, an investigator for the district attorney, worked on all the cases for about two years. He produced a comprehensive outline detailing the flow of the settlement proceeds from the insurance companies to the lawyers. The loose-leaf exhibit was labeled "Money Trails" and was placed into the evidence as an aid to the jury in tracing the proceeds. Vaclavik also testified that appellant received $1,000.00 a week for fifteen months for a total of $53,000.00. The payments were in the form of checks signed by appellant, Dr. Alfonso Gonzalez, and Tan Tu's wife, Lan Tu Huynh.

### Sufficiency of the evidence

A defendant commits the offense of engaging in organized criminal activity if, intending to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more of the listed offenses, including theft. TEX.PEN. CODE ANN. § 71.02(a)(1) (Vernon 1994 & Supp.2000). A "combination" is defined as three or more persons who collaborate in carrying on criminal activities, although: (1) the participants may not know each other's identities; (2) membership may change from time to time; and (3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations. TEX.PEN.CODE ANN. § 71.01(a) (Vernon 1994 & Supp. 2000). Because direct evidence is rarely available to prove the existence of an agreement, circumstantial evidence is sufficient and is almost always needed. *Carlson v. State*, 940 S.W.2d 776, 779 (Tex. App.—Austin 1997, pet. ref'd). It is permissible to infer an agreement among a group working on a common project when each person's action is consistent with realizing the common goal. *McGee v. State*, 909 S.W.2d 516, 518 (Tex.App.—Tyler 1995, pet. ref'd).

The evidence shows that Angie sent several "victims" to appellant. Appellant did not examine any of the "victims." Appellant received $1,000.00 a month which Phu said was paid to him for his services in examining the participants in staged wrecks and writing the fraudulent medical reports indicating they had been hurt. One of the signatories on appellant's paychecks was Mrs. Tan Tu, and the check was paid out of her account. Relying on these reports sent by Jarnigan and other attorneys, the insurance companies settled with the attorneys. Appellant admitted to Bruso that he was falsifying records and

falsifying reports. We find that a rational jury could conclude appellant "participated" in a group of three or more, in which the members intend to work together in a continuing course of criminal activities. *See Dowdle v. State,* 11 S.W.3d 233, 235–236 (Tex.Crim.App.2000).

Because the application paragraph of the trial court's charge required the jury to find that appellant did "commit the offense of theft by unlawfully appropriating ... money ... of the total value of over two hundred thousand dollars ($200,-000.00)," and the State only proved appellant received $53,000.00 and his participation generated $139,911.39, appellant asserts that the evidence is legally insufficient to sustain his conviction. The State asserts that a "hypothetically correct" charge under *Malik* could charge that appellant acting as a party together with other members of the combination committed theft of the total amount of over $200,000.00. *See Malik,* 953 S.W.2d at 240.

Based on the decisions in *Malik,* a hypothetically correct jury charge for this case would have applied the law of the parties to the facts, "is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability and adequately describes the particular offense for which the defendant was tried." *Malik,* 953 S.W.2d at 240. *See also Blanco v. State,* 962 S.W.2d 46, 46 (Tex.Crim.App. 1998), as well as a court of appeals decision relying on *Malik, Nesbitt v. State,* 958 S.W.2d 952, 954 (Tex.App.—Beaumont 1998, no pet.). In *Nesbitt,* the court of appeals found that the hypothetically correct jury charge for the case would have applied the law of parties to the facts. Therefore, the court held that the evidence in the case was legally and factually sufficient to show that appellant was guilty as a party to the underlying offense of murder while engaging in organized criminal activity. *Id. See also Nguyen v. State,* 21 S.W.3d 609, 613 (Tex.App.—Houston[1st Dist.] 2000, pet. ref'd).

■ Under the evidence, the jury could infer that appellant had an agreement with Tan Tu or his agents to work together, and appellant's part would be furnishing false medical reports and bills. Appellant's medical reports generated almost $140,000.00 of the $200,000.00 alleged to have been stolen. After the instruction on a combination, a hypothetically correct charge could authorize the jury to find appellant guilty if he committed theft as a principal or as a party by aiding or encouraging other members of the combination in the commission of theft of money over the total value of $200,000. This would allow the jury to apply the law of parties to the underlying offense of theft, and not to appellant's intent to participate in a combination.

In three companion cases involving convictions for engaging in organized crime to commit murder, the Beaumont Court of Appeals held that the parties charge applied to the appellants' acts causing the death of a victim, and not to his intent to participate in a combination. *See Campbell v. State,* 18 S.W.3d 914, 920(Tex.App.—Beaumont 2000, pet. ref'd); *Brumfield v. State,* 18 S.W.3d 921, 927–928 (Tex.App.—Beaumont 2000, pet. ref'd); *Armstrong v. State,* 18 S.W.3d 928, 932–933 (Tex.App.—Beaumont 2000, pet. ref'd.). *See also Johnson v. State,* 32 S.W.3d 388, 392–393 (Tex.App.—Houston [14th Dist.] 2000, no pet.). We find that applying the law of parties to the facts in this case is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability and adequately describes the particular offense for

which the defendant was tried. *Malik*, 953 S.W.2d at 240. We hold that the evidence is legally sufficient to sustain appellant's conviction. We overrule appellant's contentions in issue one that the evidence was legally insufficient to sustain his conviction, and that the trial court erred in denying his motion for an instructed verdict.

In issue two, appellant asserts the same evidence is factually insufficient to sustain his conviction, and the trial court erred in failing to grant a directed verdict. His argument is essentially that the quantum of the evidence is "so against the great weight of the evidence as to be clearly wrong and unjust." Appellant did not testify and did not offer any evidence in his defense. He argues that Bruso was not credible, Phu's testimony never addressed appellant's knowledge of the staged accidents, and all the State's witnesses never told appellant that they were faking accidents.

Appellant's argument goes to the weight and credibility of the evidence. What weight to give contradictory testimonial evidence is within the sole province of the trier of the fact, because it turns on an evaluation of credibility and demeanor. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex. Crim.App.1997). Accordingly, we must show deference to the jury's findings. *Id.* at 409. A decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State. *Id.* at 410. In performing a factual sufficiency review, the courts of appeals are required to give deference to the jury verdict, examine *all* of the evidence impartially, and set aside the jury verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain*, 958 S.W.2d at 410; *Clewis*, 922 S.W.2d at 129. We have examined all of the evidence impartially, a neutral review, and do not find that proof

of engaging in organized criminal activity is so "obviously weak as to undermine confidence in the jury's determination." *Johnson*, 23 S.W.3d at 11. Under the new *Clewis-Johnson* test, we further find that the proof of guilt is not greatly outweighed by appellant's contrary proof. *Id.* Considering all of the evidence, measuring it against the charge, and giving due deference to the role of the jury as fact finder, we cannot say that the finding of guilt, beyond a reasonable doubt, and the implied finding against the defensive issues, beyond a reasonable doubt, are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Reaves v. State*, 970 S.W.2d 111, 118 (Tex.App.—Dallas 1998, no pet.). We overrule appellant's contentions in issue two that the evidence is factually insufficient to sustain his conviction.

## LIMITATIONS ON VOIR DIRE

In issue three, appellant asserts that the trial court erred by unreasonably limiting the scope and duration of the voir dire. He contends he was accordingly denied effective assistance of counsel, and that the trial court abused its discretion.

Appellant contends that the trial court erred in imposing an arbitrary 30 minute time limit for voir dire. A trial court's decision to limit voir dire questioning is reviewed under an abuse of discretion standard. *McCarter v. State*, 837 S.W.2d 117, 120 (Tex.Crim.App.1992); *Ganther v. State*, 848 S.W.2d 881, 883 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). Each case is to be examined on its own facts. *Ratliff v. State*, 690 S.W.2d 597, 600 (Tex.Crim.App.1985). "A reasonable time limit for one case may not be reasonable for another.... The amount of time allotted is not, by itself, conclusive." *Id.* In this case, appellant's trial counsel used 15 of his 30 minutes for voir dire. At

the end of this time, he affirmatively stated that he had "no more to say." In light of appellant's trial counsel's assertion that he had no more to say, we find that the time imposed was not unreasonable and caused no harm. *See DeJesus v. State*, 889 S.W.2d 373, 377–378 (Tex.App.—Houston [14th Dist.] 1994, no pet.). We hold that the trial court did not abuse its discretion in limiting appellant's time to 30 minutes to voir dire the jury panel. Appellant's contention in issue three is overruled.

## COMMENT ON FAILURE TO CALL WITNESSES

In his fourth issue, appellant asserts that the trial court erred when it commented twice to the jury panel that they may consider the defendant's failure to call witnesses on his behalf.

■ Before voir dire of the jury panel by the attorneys, the trial court explained to the jury panel that the burden of proof is on the State to prove the defendant's guilt beyond a reasonable doubt, and the defendant does not have to testify. After telling the jury that a defendant does not have to testify, he further explained: "[i]f the evidence shows that there were witnesses available to the defense and they didn't call them, well, then, of course, that might be considered by you, but the defense doesn't have to put on anything." After the lunch recess, appellant objected to the "comment" that the jury could consider the fact that he did not call any witnesses. During voir dire examination of veniremember Foster, Mr. Stewart (Jarnigan's attorney) asked her if she understood that the defendant doesn't have to bring any evidence and the burden of proof was on the State. Ms. Foster stated she understood, but further indicated she wanted to hear some evidence. The trial court intervened and explained that al-

though a defendant does not have to testify, "his failure to call those witnesses who might know something about the facts is not placed in the same category as the failure of the defendant to testify." Again, appellant's attorney objected and moved for a mistrial.

On appeal, appellant contends that these statements by the trial court were reasonably calculated to injure the defendant's rights and to benefit the State. He further asserts that such remarks were impermissible comments on the weight of the evidence under article 38.05, Texas Code of Criminal Procedure.

■ The statements made by the trial court were a correct statement of the law. A prosecutor may comment upon the failure of a defendant to call witnesses, and may argue that the reason for the failure was the defendant's knowledge that their testimony would be unfavorable. *See Albiar v. State*, 739 S.W.2d 360, 362–363 (Tex. Crim.App.1987). Therefore, we find the trial judge was not stating his opinion, but rather, he was explaining the applicable rules of criminal law. *Williams v. State*, 834 S.W.2d 502, 505 (Tex.App.—Fort Worth 1992, pet. ref'd). Therefore, we find the instruction was not reasonably calculated to harm appellant or benefit the State. We hold that the trial court did not comment on the weight of the evidence by telling the jury that a defendant's failure to call witnesses can be used against him. Appellant's contention that the trial court made an improper comment on the weight of the evidence in issue four is overruled.

## THE DEFECTIVE INDICTMENT

In his fifth issue, appellant contends that the trial court erred in overruling his motion to quash the indictment. In his motion to quash, appellant contended the indictment failed to provide: (1) the manner and means of each incident of theft; (2)

any specific actions of appellant which constituted theft; (3) facts surrounding each incident of theft; (4) the names of all co-conspirators; and (5) any "overt act" performed by appellant or other co-conspirator.

■ 1. The manner and means of each incident of theft. In an organized crime case, the State need not allege the manner and means by which the underlying theft was committed. *Crum v. State,* 946 S.W.2d 349, 359–360 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd); *cert. denied,* 523 U.S. 1120, 118 S.Ct. 1800, 140 L.Ed.2d 940(1998). The trial court did not err by denying appellant's motion to quash on these grounds. Appellant's contention that the indictment is defective because it fails to allege the manner and means of each incident of theft is overruled.

■ 2. Specific actions constituting theft. Appellant contends the indictment is defective because it does not allege the specific actions constituting theft, including all misrepresentations or false statements alleged to have been made by him. Unless a fact is essential to notice, the indictment need not plead the evidence relied upon by the State. *Livingston v. State,* 739 S.W.2d 311, 321 (Tex.Crim.App. 1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). An indictment that tracks the language of the statute is legally sufficient and the State need not allege facts that are merely evidentiary in nature. *Id.* Because the indictment tracked the appropriate language of section 71.02, Texas Penal Code, adequately charging appellant with the offense of engaging in organized crime, the trial court did not err in refusing to quash the indictment. The trial court did not err in refusing to quash the indictment on these grounds, and appellant's contention is overruled.

3. Facts surrounding each incident of theft. Appellant contends the indictment should allege each incident of theft, including the date, the amount of money, the name of the insurance company, and the name of the patient or file involved, and the recipient of the money. As we stated under subpoint 2, the State need not allege facts that are merely evidentiary in nature. The indictment alleged that appellant engaged in organized crime by committing theft between October 9, 1993 and January 19, 1995. We find that this language in appellant's indictment sufficiently alleged the dates on which the continuing offense of theft took place. *See Green v. State,* 880 S.W.2d 797, 801 (Tex.App.—Houston [1st Dist.] 1994, no pet.) (indictment that alleged theft was "pursuant to one scheme and continuing course of conduct which began on or about the 24th day of February, 1990 and continued until on or about the 30th day of January, 1991," found sufficient). *See also Crum,* 946 S.W.2d at 359–360 (indictment alleged that appellant engaged in organized crime by committing theft "between February 15, 1990 and September 1, 1990, pursuant to one scheme and continuing course of conduct," found sufficient). The trial court did not err in refusing to quash the indictment on these grounds, and appellant's contention is overruled.

■ 4. The names of all co-conspirators. Appellant asserts that the indictment is defective for failing to name all the co-conspirators and other members of the combination. An indictment for organized criminal activity alleging a completed commission of an offense need not set out the names of the other members of the combination. *State v. Duke,* 865 S.W.2d 466, 468 (Tex.Crim.App.1993). We find the indictment in this case alleged a completed act of theft, and the names of all the co-conspirators did not have to be set out.

*Id.* The trial court did not err in not quashing the indictment on these grounds, and this contention is overruled.

■ 5. Failure to allege an "overt act" performed by appellant or other co-conspirator. Appellant contends the indictment was defective for failing to allege an "overt act" committed by him or other co-conspirator or member of the combination. When the State alleges that a defendant has committed, rather than has conspired to commit, one of the enumerated offenses, there is no requirement that it allege or prove the existence of any overt acts. *See Duke,* 865 S.W.2d at 468. Because appellant's indictments allege that he committed the specific offense of theft, the State was not required to plead or prove any overt acts. We find the trial court did not err in overruling appellant's motion to quash on these grounds. Appellant's contention that the indictment was defective for failing to allege an overt act is overruled.

We hold that appellant's indictment was not defective, and that it provided appellant with all the notice required by law. Furthermore, appellant has failed to demonstrate that he was harmed as a result from lack of notice of what the State intended to prove. For these reasons, we overrule appellant's contentions in issue five.

## DENIAL OF MOTION FOR SEVERANCE

In issue six, appellant contends the trial court erred when it denied his motions to sever his case from his co-defendants. Appellant argues that the disparity of culpability between the defendants, and the high probability of confusion by the jury severely prejudiced appellant.

Article 36.09 of the Code of Criminal Procedure provides:

Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, *and evidence introduced thereon,* it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

TEX.CODE CRIM.PROC.ANN. art. 36.09 (Vernon 1981 and Supp.2000) (emphasis added).

■ Appellant failed to offer any evidence to the trial court to support his claims of prejudice and jury confusion. At the pretrial hearing on the motions to sever, the trial court advised the parties it would carry the motions with the trial and allow the parties to urge them during the trial. After the State and defense rested, and before final argument, appellant's counsel urged his motion for severance. Without providing the trial court any argument or evidence of prejudice, appellant's counsel stated: "Defendant Gemoets also joins with Mr. Stewart (Jarnigan's attorney) for a severance." The trial court denied all motions to sever.

■ Where no evidence was offered in support of the motion, no error is shown in the absence of such evidence offered at the time the motion was presented and overruled. *Sanne v. State,* 609 S.W.2d 762, 776 (Tex.Crim.App.1980), *cert. denied,* 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 432 (1981); *Fisher v. State,* 681 S.W.2d 202, 206 (Tex.

App.—Houston [14th Dist.] 1984, pet. ref'd). *See also Crum,* 946 S.W.2d at 366 (opinion on reh'g). Because appellant failed to provide any evidence to support his motion to sever, we hold the trial court did not err in denying severance. Appellant's contentions in issue six are overruled.

The judgment of the trial court is affirmed.