# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00356-CR

**Pablo Rodriguez, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
## NO. 00-7101, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Pablo Rodriguez appeals from his conviction for engaging in organized criminal activity. *See* Tex. Pen. Code Ann. § 71.026(a)(1) (West Supp. 2004-05). Appellant entered a plea of guilty. In accordance with a plea bargain agreement, punishment was assessed at eight years deferred adjudication probation. In two issues on appeal, appellant contends that the trial court erred in overruling a motion for continuance and in overruling his motion to quash the indictment.[1] We affirm the trial court's judgment.

Appellant notes that he is not challenging the sufficiency of the evidence, and so recites the facts of the case in connection with each issue. We will do the same.

---

[1] Appellant's first appeal was dismissed for want of jurisdiction as untimely. *See Rodriguez v. State*, No. 03-02-023-CR (Tex. App.—Austin Jan. 31, 2002). He received permission for an out-of-time appeal. The trial court certified appellant's right to appeal adverse rulings on pre-trial motions. *See* Tex. Code Crim. Proc. Ann. art. 44.02; Tex. R. App. P. 25.2, 26.2.

## Discussion

### *Continuance*

This appeal arises from an organized crime prosecution of an alleged insurance fraud ring that staged automobile accidents to generate insurance claims. This complex case involved multiple defendants and a series of five indictments (the original indictment and four reindictments). Throughout the course of the proceedings, issues arose concerning the State's tardy delivery of discovery materials.[2] The State indicated it intended to use hundreds of exhibits, comprised of thousands of pages of material and ultimately, forty-three tapes of witness interviews. Copies of other exhibits were delivered in batches. Other exhibits included: a spreadsheet showing a detailed listing of some forty accidents with the insurance company, claim number, who was involved and the amount of loss and their accompanying insurance company files; lease documents for the offices used; client lists; fingerprint cards; ledger books; checks made payable to the defendants; charts documenting phone calls and money flow; scraps of paper noting settlement agreements; payment stamps; and assorted Rolodexes.

The State conceded it was three days late in the delivery of the final discovery. These problems culminated in the court's admonition to the prosecution at the final pre-trial hearing that "somehow . . . you are going to have to make this stuff available. I don't know what it's going to take. We've been doing this for a year." The court also expressed its concern that arrangements had already been made with the law school to try the case there and "I can't just shut it off like hot and

---

[2] The State contends that it had an "open file" policy and did, by letter, inform opposing counsel that the material was available for their inspection. The discovery delivery times were complicated by the multiple defendants being tried in two different groups.

cold water. I can't do that." The court refused to grant a continuance. In his first issue, appellant contends that the trial court erred in denying his motion for continuance.

A criminal action may be continued on written motion "upon sufficient cause shown," but the continuance "may only be for as long as necessary." *See* Tex. Code Crim. Proc. Ann. art. 29.03 (West 1989). All motions for continuance must be in writing and "sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id*. arts. 29.03, 29.08. The trial court's ruling on a motion for continuance is reviewed under an abuse of discretion standard. *Coleman v. State*, 481 S.W.2d 872, 873 (Tex. Crim. App. 1972). To establish an abuse of discretion, the defendant must show that he was actually prejudiced by the denial of his motion. *See Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 1995); *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995).

The State first argues that error was not preserved. Because it appears that appellant intended to adopt co-defendant Lloyd Dunn's motion, we will assume for the purposes of argument that error was preserved[3] and analyze whether the denial of the continuance prejudiced the defendant. Appellant argues that he was harmed because the failure to grant the continuance in essence compelled appellant's guilty plea, rendering that plea involuntary. He urges that counsel's lack of preparation time would have forced counsel into a position in which he would have been ineffective as a matter of law.

---

[3] We note that trial counsel "adopted" co-defendant Dunn's motion on the day of trial. However, after the court told appellant's trial counsel that the court would allow any necessary recesses to review material during trial, but would not continue the case, appellant's trial counsel made no further objection. Dunn's trial counsel, now appellant's appellate counsel, persisted in his objection.

3

The record shows that appellant pleaded guilty after jury selection had begun. Counsel stated that he "didn't know until twenty minutes ago that [appellant] would take the plea bargain." The record reflects the proper admonishments concerning the plea. Appellant stated that he made the plea freely and voluntarily. Punishment was assessed in accordance with the agreement.

Admonishments are a *prima facie* showing that the plea was knowing and voluntary. *Cox v. State*, 156 S.W.3d 599, 602 (Tex. App.—Tyler 2004, pet. ref'd). Once a defendant has attested to the voluntary nature of the plea, he bears a heavy burden at any subsequent hearing to contest voluntariness. *Pena v. State*, 132 S.W.3d 663, 666 (Tex. App.—Corpus Christi 2004, no pet.). The defendant challenging the plea has the burden to show that he entered the plea without understanding the consequences of his actions and thus was harmed. *Id.* If appellant is claiming that he was harmed by ineffective assistance of counsel, he must show counsel's alleged deficiencies caused the plea to be involuntary. In other words, but for counsel's errors, the defendant would not have pleaded guilty but would have insisted on going to trial. *Ex parte Gray*, 126 S.W.3d 565, 568-69 (Tex. App.—Texarkana 2003, pet. dism'd).

Appellant did not file a motion for new trial to raise his contention that the plea was involuntary or that counsel was ineffective. The record reflects that multiple other co-defendants accepted the plea. Two defendants[4] proceeded to trial (without the continuance) and were acquitted. It is a logical inference that the preparation time was not so severely impacted by State delays in producing discovery that the court's failure to grant the continuance would have rendered counsel

---

[4] Although he did not represent appellant at trial, appellate counsel represented Dunn, one of the co-defendants who was acquitted.

"ineffective as a matter of law." Nothing in the record shows that appellant considered the denial of the continuance as a factor in deciding to accept the plea; indeed, the acceptance seemed to surprise appellant's trial counsel. This record on direct appeal does not reflect evidence that overcomes the presumption that the plea was voluntary. *See Ex parte Puente*, 71 S.W.3d 340, 344 n.14 (Tex. Crim. App. 2002) (defendant may file 11.07 writ of habeas corpus and offer proof on issue of voluntariness). Accordingly, we overrule appellant's first issue.

***Motion to Quash***

In his second issue, appellant contends that the trial court erred when it overruled his motion to quash the indictment.[5] Appellant complains that count one of the indictment charging that he engaged in organized criminal activity did not provide adequate notice because the allegations concerning the incorporated offense of theft were not specific enough.

Count one[6] of the sixteen-page indictment alleged that appellant and approximately twenty-eight other co-defendants "with the intent to establish, maintain, and participate in a combination and in the profits of a combination" that consisted of three or more of the named defendants and seven others conspired to commit the offense of theft of $200,000 or more by agreeing with each other that they would engage in conduct that constituted the offense. The

---

[5] The State notes that appellant has been unable to locate trial counsel's motion to quash the fifth indictment. The State agrees that appellant sufficiently demonstrated preservation by adopting his co-defendant's motion to quash in his argument at trial.

[6] The parties discuss only count one of the indictment, the count to which appellant pleaded guilty. Count two of the indictment alleged theft and was dismissed.

indictment then listed eighty-seven overt acts that these co-defendants committed in furtherance of that agreement.

The overt acts section of the indictment described the formation of a chiropractic clinic for the purpose of generating medical bills for insurance claims arising out of staged motor vehicle wrecks. The indictment then described other steps in the scheme: opening a law office to service claims from these accidents, preparing false documents to obtain driver's licenses, and soliciting individuals to participate in staged motor vehicle collisions to generate insurance claims. The indictment alleged that Victor Cuevas, one of the conspirators, and others obtained insurance policies to cover the participants in the collisions, paid each individual involved in the collision in exchange for their interest in the insurance claim, and paid each co-conspirator a per-person rate for each individual they solicited to participate in these wrecks.

The indictment alleged that the conspirators solicited individuals who had been in wrecks to seek treatment at the chiropractic clinic and seek representation at certain law offices, including that of appellant. It specifically alleged that appellant agreed with Cuevas to provide legal representation to individuals who had been in staged car accidents. For each individual "successfully solicited," appellant received 16.67% of the proceeds from Cuevas. As part of the plan, the victims were referred to medical clinics also involved in the scam. Appellant agreed to pay the full medical bills submitted, to lease Cuevas office space and to allow Cuevas to represent himself as appellant's legal assistant in negotiations of motor vehicle claims. Appellant later authorized Eric Arriola (a/k/a Eric Rios) to take over for Cuevas and use appellant's name and bar number to operate an Austin

6

law office with Cuevas in appellant's name. This office handled approximately 100 motor vehicle accident insurance cases.

The indictment enumerated multiple accidents in which appellant represented individuals who had participated in staged collisions, especially the so-called "swoop and squat" collisions.[7] For example, appellant represented three individuals who participated in a staged automobile collision involving a rental vehicle on September 27, 1994. This claim settled for approximately $16,864.95. In another, appellant represented three solicited individuals who participated in a "swoop and squat" collision on November 6, 1996. Appellant negotiated a settlement for approximately $26,694.00 with another insurance company. The indictment enumerated enough accidents with their accompanying settlement amounts to aggregate over the $200,000 alleged. The indictment then went on to describe the expansion of the scheme to El Paso.

When the adequacy of the indictment is a question of law, the district court's ruling is subject to de novo review. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *State v. McCoy*, 64 S.W.3d 90, 92 (Tex. App.—Austin 2001, no pet.). When reviewing the denial of a motion to quash, the appellate court must first determine if the notice given was sufficient. If it was, the court's inquiry ends; if not, the court examines the record to determine the impact of the deficiency on the appellant's defense. *See Crum v. State*, 946 S.W.2d 349, 359 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd).

---

[7] A "swoop and squat" refers to a collision in which drivers intentionally cause rear-end motor vehicle collisions involving innocent parties. The "squat" vehicle pulls in front of the target; the "swoop" vehicle then pulls in front of the "squat" vehicle, which brakes suddenly, usually resulting in the target vehicle rear-ending the squat vehicle. Rupp's Insurance & Risk Management Glossary *available at* http://www.insurance.cch.com/ripps/swoop-and-squat.htm.

7

A defendant must be given notice before trial of the "nature and cause" of the accusation against him, and that notice must be given with sufficient clarity and detail to enable the defendant to anticipate the State's evidence and prepare a proper defense to it. U. S. Const. amend. VI; Tex. Const. art. I, § 10; *Garcia v. State*, 981 S.W.2d 683, 685 (Tex. Crim. App. 1998). Thus, an indictment must allege all the facts and circumstances necessary to establish all the material elements of the offense charged, using plain and intelligible language. *Garcia*, 981 S.W.2d at 685.

A motion to quash should only be granted when the language concerning the defendant's conduct is so vague or indefinite as to deny him effective notice of the acts he allegedly committed. *DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988); *Crum*, 946 S.W.2d at 359. In general, an indictment that tracks the language of the penal statute will be legally sufficient; the State need not allege facts that are merely evidentiary in nature. *DeVaughn*, 749 S.W.2d at 67; *State v. Rivera*, 42 S.W.3d 323, 329 (Tex. App.—El Paso 2001, pet. ref'd); *see also Beck v. State*, 682 S.W.2d 550, 554 (Tex. Crim. App. 1985). The indictment is read as a whole to determine whether it sufficiently charges an offense. *DeVaughn*, 749 S.W.2d at 67. Thus, the notice provided by the indictment may be included in the charging paragraph and/or in the allegations of overt acts. *See State v. Mauldin*, 63 S.W.3d 485, 489 (Tex. App.—Tyler 2001, pet. ref'd); *Woods v. State*, 801 S.W.2d 932, 934 (Tex. App.—Austin 1990, pet. ref'd). In some cases, due process requirements with regard to notice may be satisfied by methods other than the language in the charging instrument. *See Moff*, 154 S.W.3d at 603; *Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003).

An indictment charging conspiracy to commit a felony need not allege the intended offense with the particularity necessary in an indictment charging the commission of the intended

offense. *Smith v. State*, 781 S.W.2d 418, 420 (Tex. App.—Houston [1st Dist.] 1989, no pet.). An indictment alleging the essential elements of conspiracy, specifying each conspirator involved and the overt acts committed in furtherance of the conspiracy, is adequately specific. *Id*. (citing *United States v. Willis*, 583 F.2d 203, 207 (5th Cir. 1978)).

When the indictment tracks the language of the appropriate subsections of penal code section 71.02, it adequately charges the defendants with the offense of engaging in organized crime and the trial court does not err in refusing to quash the indictment. *Gemoets v. State*, 116 S.W.3d 59, 73 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Crum*, 946 S.W.2d at 359-60; *Childress v. State*, 807 S.W.2d 424, 431 (Tex. App.—Amarillo 1991, no pet.); *Smith*, 781 S.W.2d at 420. In an organized crime case, the State need not allege the manner and means by which the underlying theft was committed. *Crum*, 946 S.W.2d at 359-60 (citing *Lucarion v. State*, 658 S.W.2d 835, 837 (Tex. App.—Houston [1st Dist.] 1983, no pet.)); *see also Gemoets*, 116 S.W.3d at 72. Also, in an organized crime case, when the indictment alleges that the thefts committed by the defendants while participating in the combination occurred over a period of time between two dates, this language provides sufficient notice of the date on which the continuing offense of theft took place. *See Gemoets*, 116 S.W.3d at 72 (citing *Crum*, 946 S.W.2d at 360).

A recent trilogy of cases raising issues similar to the instant case arose out of a comparable scheme in the Houston area. Appellant Gemoets was charged with engaging in organized criminal activity by committing theft of over $200,000 from five insurance companies between October 9, 1993, and January 19, 1995. *Id*. at 63. The scheme involved the staging of automobile accidents. Gemoets treated patients from these staged accidents. *Id*. Gemoets

9

contended that the trial court should have overruled the indictment because it was insufficiently specific concerning the manner and means of each specific incident, any specific actions by appellant that constituted theft, facts surrounding each incident of theft, names of all co-conspirators, and any overt acts performed by appellant or other co-conspirator. *Id*. at 71-72.

The court first noted that in an organized crime case, the State need not allege the manner and means by which the underlying theft was committed and overruled appellant's contention that the indictment needed to specify the manner and means of each incident of theft. *Id*. The court also noted that unless a fact is essential to notice, the indictment need not plead the evidence relied upon by the State. Because the indictment tracked the language of the statute, it adequately charged appellant with the offense of engaging in organized crime. *Id*. The court also held that the allegation of dates between October 9, 1993, and January 19, 1995, sufficiently alleged the dates on which the continuing offense of theft occurred. *Id*. The appellate court overruled appellant's challenge to the trial court's overruling of the motion to quash. *Id*. at 73. *See also Tan Kien Tu v. State*, 61 S.W.3d 38 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (same indictment for co-conspirator of Gomoets); *Jarnigan v. State*, 57 S.W.3d 76 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (same).

*Application*

The gravamen of appellant's complaint is that the indictment gave him inadequate notice of the offense alleged. Specifically, appellant contends that the allegations concerning the incorporated crime of theft were not specific enough, arguing that count one merely states, "[C]onspire to commit the offense of theft of $200,000 or more, by agreeing with each other that

10

they would engage in conduct that constituted said offense . . . ." However, appellant's argument would have us stop reading count one before reaching the specific allegations enumerated in the overt acts section. *See Woods*, 801 at 420 (notice may be in charging paragraph or allegations of overt acts). Count one, read as a whole, gave appellant notice of the offense against which he had to prepare a defense: the creation of false claims to collect wrongfully payments from insurance companies. It gave multiple specific incidents of false collisions, the names (often aliases) of the conspirators involved, and the amount that was extracted from the insurance company and tracked the language of the appropriate subsections of penal code section 71.02. *Crum*, 946 S.W.2d at 359-60.[8]

The indictment in this case is substantially the same as the indictments in the trio of Houston cases. *See Gemoets*, 116 S.W.3d at 59; *Tan Kien Tu*, 61 S.W.3d at 38; *Jarnigan*, 57 S.W.3d at 76. We agree with those cases, and hold the trial court did not err in failing to quash the indictment. We overrule appellant's second issue.

---

[8] Unlike *State v. Moff*, 154 S.W.3d 599 (Tex. Crim. App. 2004), involving an indictment for misapplication of fiduciary property, this indictment details particular acts on which the State relied. It did not require the defendant to "gather evidence and prepare a defense" for each credit card and cash transaction over a seven-year period without knowing which transactions the State alleged were illegal. *Id*. at 603.

11

## Conclusion

We have held that appellant did not demonstrate harm from the denial of the continuance and did not show that the trial court abused its discretion in overruling his motion to quash. Having overruled both of appellant's issues, we affirm the judgment of the trial court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   July 14, 2005

Do Not Publish

12