**Marsha MAST, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–98–00151–CR.**

Court of Appeals of Texas,
El Paso.

Nov. 18, 1999.

Edward L. Shelby, Midland, for Appellant.

Al W. Schorre, Jr., Dist. Atty. of Midland County, Eric Kalenak, Asst. Dist. Atty., Midland, for State.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

LARSEN, Justice.

Marsha Mast appeals her conviction for engaging in organized criminal activity, enhanced. In a single ground of error, she contends that the evidence was legally insufficient to support her conviction. We affirm.

### FACTS

Marsha Mast was living in the house of Ronnie Roberson in Midland, Texas. Two other men, Johnny McBee and Buddy McCabe, were also staying at the house. On or about July 7, 1997, a Builders and Homeowners Supply Company in Midland was burglarized. Soon thereafter, a man came by Roberson's house and traded stolen power tools, later ascertained to be those from the B & H Supply burglary, for Roberson's motorcycle (which was not running). Roberson brought the tools into the house, placing some under the bed in the bedroom used by Mast, and some in a storage shed. Everyone in the house knew the tools were stolen, where they were concealed, and that the plan was to sell them.

Pursuant to a tip, on July 9, 1997, an undercover detective called Roberson's home and spoke with someone named Johnny about buying tools. He called a second time, and then went to Roberson's residence. There, he spoke with Johnny McBee, who took him into the back bedroom. McBee showed the detective some power tools, which he took from a duffel bag underneath the bed. While the two were negotiating a price for the tools, Mast entered the room and began participating in the negotiations. She wrote some figures down in her effort to determine a fair price for the tools. She and McBee agreed that a fair amount would be half the retail price marked on the tools. Eventually, the detective paid McBee three hundred dollars for the tools, with the agreement that he could return to buy more tools later. Although she asked both the men for a cut of this money, neither the detective nor McBee gave Mast anything. She became upset and told them to leave her room. McBee testified that he gave the entire three hundred dollars to Roberson, because it was "Ronnie's deal."

On July 10, the detective again came to the house and bought some more tools from Roberson and McBee. This time, Buddy McCabe was also there. Everyone in the house was arrested immediately after this transaction. Mast was convicted of engaging in organized criminal activity, and sentenced to nine years in the penitentiary. On appeal, she urges there was legally insufficient evidence at trial to satisfy an element of the offense, namely that the group intended to establish, maintain, or participate in a continuing course of criminal activities, rather than a single incident of theft.

### STANDARD OF REVIEW

■ In reviewing the sufficiency of the evidence to support a conviction, we measure the evidence against the elements

of the offense as defined by a hypothetically correct jury charge.[1] A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[2] Moreover, in passing on legal sufficiency of the evidence, we determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.[3] We do not resolve conflicts of fact or assign credibility to witnesses, as it was the jury's function to accept or reject any, part, or all of any witness's testimony.[4] Our duty, rather, is to determine only if the explicit and implicit findings of the trier of fact are rational by viewing all the evidence in a light most favorable to the verdict. We resolve any inconsistencies in the evidence in favor of the verdict.[5]

### Evidence Supporting the Conviction

■ In her only issue on appeal, Mast contends that the State evidence against her proved, at most, a single offense, which cannot satisfy the elements of engaging in organized criminal activity. She urges that no evidence indicates an intent to establish, maintain, or participate in a group that would work together in a continuing course of criminal activities. The elements of engaging in organized criminal activity are: (1) a person; (2) with intent to establish, maintain, or participate in a combination; (3) commits or conspires to commit; (4) a listed offense, here theft.[6] "Conspiracy to commit" means an agreement with one or more persons that they or one or more of them will engage in conduct that would constitute the offense and the defendant and one or more of the others perform an overt act in pursuance of the agreement. An agreement may be inferred from the acts of the parties.[7] A "combination" means three or more persons who collaborate in carrying on criminal activities.[8] Moreover, a "combination" requires that the persons involved work together with the intent of establishing a *continuing* course of criminal activities; proof that the defendant and others committed or conspired to commit a single offense is not sufficient to prove the crime.[9] It is this element of intent to engage in a continued course of conduct, rather than a single act, which Mast contends the State failed to prove.

■ Examining the record, however, we find otherwise. Roberson acquired a large number of stolen tools on one day, which he brought into the house and concealed. All four people living in the house knew the tools were stolen, knew where they were concealed, and that Roberson planned to sell them. Soon thereafter, Roberson and his housemates engaged in at least two transactions involving the sale of stolen tools. Mast actively participated in one of these transactions, and sought a portion of its proceeds. This evidence,

1. *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim.App.1997).

2. *Id.*

3. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 156–57, 159 (Tex.Crim.App.1991).

4. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

5. *Matson,* 819 S.W.2d at 843 (quoting *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988)).

6. TEX. PENAL CODE ANN. § 71.02(a) (Vernon 1994 & Supp.1999); *McLaren v. State,* 2 S.W.3d 595, 597 (Tex.App.—El Paso 1999, pet. filed).

7. TEX. PENAL CODE ANN. § 71.01(b) (Vernon 1994); *McLaren,* at 597.

8. TEX. PENAL CODE ANN. § 71.01(a) (Vernon 1994); *McLaren,* at 597.

9. *Nguyen v. State,* 1 S.W.3d 694 (Tex.Crim. App.1999).

viewed in a light most favorable to the verdict, supports a conclusion that Mast and at least two others had agreed, albeit informally, to form a group for the purpose of possessing and selling stolen goods. Although the stolen tools were all acquired in a single transaction, a reasonable jury could infer that the group's intent was to work together to sell the stolen items until they were gone. We believe this is sufficient to constitute a continuing course of criminal activities.[10]

In reaching our conclusion, we contrast the facts of this case with those of *Nguyen,* which the Court of Criminal Appeals held were insufficient to establish a continuing course of criminal activity. There, members of the Asian Cultural Committee at the University of Texas became angered at members of UT's Latin American Student's Association, while the two groups were eating at the same Austin restaurant. Several Asian Committee members left the restaurant, agreed to return and fight, but before doing so obtained a rifle from Nguyen's apartment. They returned to the parking lot of the restaurant, where Nguyen fired at several of the Latin American students, killing one and injuring another. Although Nguyen's murder conviction was upheld, the high court found the evidence established only an agreement to jointly commit a single crime. In concluding this was insufficient to support a conviction for engaging in organized criminal activity, the court parsed the legislature's definition of "combination" in the penal code: [11]

> The State offers to define the phrase 'collaborate in carrying on criminal activities' as 'work[ing] jointly in doing or conducting a crime.' ... Such a definition would be at odds with the language of the statute. The verb 'carrying on' connotes an action that continues over time. The plural object, 'activities,' implies that the combination seeks to do

more than one thing. If the legislature intended the meaning that the State advances, the natural language should have been, 'collaborate in committing a criminal act,' or the like.[12]

In this case, we think the evidence against Mast satisfies both the requirements that the activity continue over time, and that the combination intend to do more than one thing. The actors here acquired stolen goods, concealed them, and engaged in at least two transactions to sell them. We overrule Mast's single ground of error.

### *CONCLUSION*

We affirm the trial court's judgment of conviction.

---

10. *See Nguyen,* 1 S.W.3d 694.

11. "Combination" means three or more persons who collaborate in carrying on criminal

activities. TEX. PENAL CODE ANN. § 71.01(a) (Vernon 1994).

12. *See Nguyen,* 1 S.W.3d 694.