The STATE of Texas, Appellant,

v.

Jesse Harold MAULDIN, Johnny Howard Mauldin, Lawrence Alfonse Bullette and Chris Young, Appellees.

Nos. 12–00–00094–CR to 12–00–00097–CR.

Court of Appeals of Texas, Tyler.

June 20, 2001.

Rehearing Overruled Aug. 6, 2001.

Discretionary Review Refused Nov. 21, 2001.

Ed Marty, Tyler, for state.

Cynthia Orr, San Antonio, for appellees in docket #12-00-00094-CR.

Clifton Holmes, Longview, for appellees in docket #12-00-00095-CR.

Linda Altier, Tyler, for appellees in docket #12-00-00096-CR.

Jeff Haas, Tyler, for appellees in docket #12-00-00097-CR.

Panel consisted of DAVIS, C.J., WORTHEN, J., and RAMEY, JR., Retired C.J., Twelfth Court of Appeals, TYLER, sitting by assignment.

WORTHEN, Justice.

The State of Texas ("State") indicted Jesse Harold Mauldin, Johnny Howard Mauldin, Lawrence Alfonse Bullette, and Chris Young ("Appellees") for engaging in organized criminal activity in connection with conspiring to deliver more than 400 grams of cocaine. The trial court quashed the indictments, and the State appeals. In one issue, the State argues the trial court erred by quashing the indictments because the indictments alleged all of the necessary elements of the offense of engaging in organized criminal activity. We reverse the trial court's order quashing the indict-

ments and remand for further proceedings.

## BACKGROUND

In July 1988, the Grand Jury of Smith County indicted the Appellees in separate, identical indictments, the relevant portion of which is attached hereto as Appendix "A." The Appellees were tried and convicted, but in 1993 this Court reversed the convictions due to error in jury selection. *Mauldin v. State*, 874 S.W.2d 692 (Tex. App.—Tyler 1993, pet. ref'd). In January 2000, Appellees filed a motion to set aside the indictments, asserting that the State had failed to allege more than one ultimate offense and that an allegation of more than one criminal offense was a necessary element of the offense of engaging in organized criminal activity. Appellees cited the holding of the Texas Court of Criminal Appeals in *Nguyen v. State*, 1 S.W.3d 694 (Tex.Crim.App.1999), as authority. After a hearing on Appellees' motion, the trial court quashed the indictments, stating on the record that it believed it was bound to set aside the indictments by *Nguyen* because the State had only alleged one ultimate crime in the indictments. The State timely filed this appeal.

## DISCUSSION

▆▆▆ We review a trial court's ruling on a motion to quash an indictment for an abuse of discretion. *Thomas v. State*, 621 S.W.2d 158, 163 (Tex.Crim.App.1980). A written instrument must charge a person with the commission of an offense in order to qualify as an indictment. *Duron v. State*, 956 S.W.2d 547, 549 (Tex.Crim.App. 1997). In their motion to quash the indictments before us, Appellees maintained that the indictments failed to allege all of the elements of engaging in organized

criminal activity and, therefore, failed to meet the requirements of sections 21.01, 21.02(7), 21.03, 21.04, and 21.11 of the Texas Code of Criminal Procedure as well as federal and state constitutional requirements. Engaging in organized criminal activity is defined by section 71.02(a)(5) of the Texas Penal Code:

> (a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits or conspires to commit one or more of the following:
>
> . . .
>
> (5) unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug,
>
> . . .

TEX. PEN.CODE ANN. § 71.02(a)(5) (Vernon Supp.2001). At the time of the offense, a "combination" was defined as five or more persons who collaborate in carrying on criminal activities. Organized Crime Act, 65th Leg. R.S., ch. 346, § 1, 1977 Tex. Gen. Laws 922, *amended by* Act approved June 15, 1989, 71st Leg., R.S., ch. 782, § 1, 1989 Tex. Gen. Laws 3468.[1] The elements of engaging in organized criminal activity are: (1) a person, (2) with intent to establish, maintain or participate in a combination, (3) commits or conspires to commit, (4) a listed offense. *Mast v. State*, 8 S.W.3d 366, 369 (Tex.App.—El Paso 1999, no pet.).

In its sole issue, the State contends that the indictments should not have been quashed because all of the elements of the offense of engaging in organized criminal activity, including the second element, were alleged in the indictments. The Appellees contend that the second element of

---

1. The current Penal Code definition of "combination" requires only three or more persons. *See* TEX. PEN.CODE ANN. § 71.01(a) (Vernon Supp.2001).

the offense was not alleged in the indictments because the indictments alleged only one crime.

The court of criminal appeals held in *Nguyen:* "[T]he phrase 'collaborate in carrying on criminal activities' cannot be understood to include an agreement to jointly commit a single crime; the State must prove more than that the Appellant committed or conspired to commit one of the enumerated offenses with two or more other people." *Nguyen,* 1 S.W.3d at 697. However, the State correctly points out that the court went on to explain in the *Nguyen* opinion, "We are not saying that the acts which prove this element of the offense must be criminal offenses." *Id.* By way of example, the court described the activities of the defendants which proved the "intent to establish, maintain, or participate in a combination" element of the offense of engaging in organized criminal activity in *Barber v. State,* 764 S.W.2d 232 (Tex.Crim.App.1988). *Barber* involved a scheme to sell stolen oil. *Id.* The court of criminal appeals upheld the *Barber* court's determination that the element of "intent to establish, maintain, or participate in a combination or the profits of a combination" was proved by evidence of a variety of non-criminal activities including putting up money for the operation, leasing property where stolen oil would be stored, calling to set up operations, and hiring drivers to transport the stolen oil. *Id.* The *Nguyen* court determined that when the goal was to set up a criminal organization, acts such as these in *Barber* provided evidence of an intent to do more than agree to commit one crime. *Id.*

The State argues that the allegations in the indictments before us are more similar to the activities detailed in *Barber* than those in *Nguyen.* In *Nguyen,* the defendant and a group of friends were dining in an Austin restaurant when men at another table directed lewd comments toward a woman in their party. *See Nguyen v. State,* 977 S.W.2d 450, 452 (Tex.App.—Austin 1998), *aff'd,* 1 S.W.3d 694 (Tex. Crim.App.1999). After words and threats were exchanged, the manager asked Nguyen and his friends to leave the restaurant. *See id.* Nguyen and his friends then went to his apartment where they retrieved a gun and returned to the restaurant to wait for the other group of men to emerge. *See id.* As the other group exited the restaurant, Nguyen shot and killed the victim. Justice Jones, writing for the Austin court, concluded that "all of the evidence here ... indicates that the murder was committed with intent and agreement to retaliate through the commission of a single offense; no evidence indicates an attempt to establish, maintain or participate in a group that would work together in continuing a course of criminal activities." *Id.* at 456.

Two years later, Justice Jones wrote an opinion reversing yet another conviction for engaging in organized criminal activity. The facts in *Ross v. State,* 9 S.W.3d 878, 880 (Tex.App.—Austin 2000, pet. ref'd), showed that Ross, driving a Camaro, had been cut off while going south on Interstate 35 ("I–35") by Tonya Hancock. Ross, along with his brother and a friend who were in a pickup, began a high-speed game of cat-and-mouse with Hancock on I–35. *See id.* Ross, his brother, and their friend began assaulting Hancock's vehicle with beer bottles or cans and mooning her, and, at one point, they forced her to a stop on I–35. *See id.* Hancock eventually exited I–35 onto the frontage road of Highway 290 where she was caught by the Ross brothers and their friend. *See id.* The three men ripped open Hancock's door and began punching her with their fists, breaking her nose and two of her teeth. *See id.* at 880–81. Ross was charged with two counts of engaging in organized criminal

activity and one count of aggravated assault. *Id.* at 881.

The State contended in *Ross* that the chain of assaults constituted a continuing course of criminal activities and that *Nguyen* did not apply because it had involved only one offense. *See id.* at 882. Justice Jones determined that although more than one criminal offense had been committed by Ross, a "case-specific inquiry is required to determine whether a series of offenses committed by the same group indicates that a combination existed." *Id.* Justice Jones wrote,

> As in *Nguyen*, the State has not pointed to any evidence in the record to support a finding that there was an intent to form a combination that would carry on a continuing course of criminal activities beyond the single criminal episode involving the attack on Hancock. Even the commission of more than one offense by Appellant and his co-defendants does not give rise to a reasonable inference of an agreement as to continuity.

*Id.* In both *Nguyen* and *Ross*, Justice Jones determined that the crimes were spontaneous, retaliatory actions which were part of the same criminal episode and which did not establish the continuity required to establish the elements of the offense of engaging in organized criminal activity.

▇▇▇ Appellees contend that the activities of May 19 and 20, 1988, described in the indictments, "are merely a spontaneous series of acts that were all part of the same criminal episode." We disagree. "Spontaneous" is defined as "acting, reacting, or happening without apparent forethought, prompting or planning." The American Heritage Dictionary of the English Language 1741 (3rd ed.1996). An agreement to engage in a course of continued criminal activities may be inferred from the parties' alleged conduct. *Cf.*

*Mayfield v. State*, 906 S.W.2d 46, 48 (Tex. App.—Tyler 1995, pet. ref'd) (reiterating that an agreement to commit conspiracy can be inferred from parties' conduct). Future criminal acts can be inferred from the purchase and movement of a large quantity of illegal drugs. *See id.* at 48–49. It can be inferred from the amount of cocaine allegedly delivered from Los Angeles, California, to Tyler, Texas, that the Appellees were in the business of selling drugs and planning to make a profit. We note that the indictments allege a coordinated interstate effort to deliver a large amount of cocaine over 1500 miles for what would reasonably be expected to be a large payout.

Contrast this to the facts in *Nguyen* and *Ross*. There, the defendants were involved in recreational activities on a Saturday night. No money was involved. All of their actions were clearly spur-of-the-moment and, as Justice Jones said, "retaliatory ." *See Ross*, 9 S.W.3d at 882. *Ross* and *Nguyen* involved emotional responses by the defendants to perceived wrongs rather than coordinated, planned activities as alleged in the indictments before us.

Here, Appellees conceded at oral argument that they were handling contraband *per se*, just as were the defendants in *Barber*. In both cases, the parties were preparing to sell their contraband for a profit and had taken actions to reposition the contraband, in this case from Los Angeles to Tyler, for that purpose. The indictments in the instant case allege multiple overt acts in which Appellees engaged; these allegations are sufficient to put the Appellees on notice of how the State intends to prove the combination element of the offense of engaging in organized criminal activity. *See Mast v. State*, 8 S.W.3d at 369; *see also Ross*, 9 S.W.3d at 882; *cf. Nguyen*, 977 S.W.2d at 455.

*Nguyen* is, of course, a sufficiency of the evidence case rather than a sufficiency of the indictment case. The Appellees contend that the court of criminal appeals extended its holding in *Nguyen* to indictment cases by its opinion in *Minor v. State*, 9 S.W.3d 835 (Tex.Crim.App.2000). In reviewing both the court of criminal appeals' and court of appeals' opinions in *Minor*, which involved a burglary as the ultimate offense, we find no description of the allegations in the indictment which purported to charge a combination, no description of the events or overt acts in furtherance of the burglary or the combination, nor even the number of individuals who were involved in the burglary. *See Minor v. State*, 9 S.W.3d 835; *State v. Minor*, 981 S.W.2d 481 (Tex.App.—Eastland), *pet. granted, remanded with instructions by, Minor v. State*, 9 S.W.3d 835 (Tex.Crim.App.2000). Not presented with a sufficient portion of the language, if any, alleging a combination in the *Minor* indictment, we are unable to determine whether that case is more comparable to *Nguyen* or to *Barber*. Therefore, we are unable to determine whether *Minor* has any precedential value.

### CONCLUSION

■ An indictment that is valid on its face and returned by a properly constituted grand jury is sufficient to mandate trial of the charge on its merits. *State v. Rosenbaum*, 910 S.W.2d 934, 947 (Tex. Crim.App.1994) (op. on reh'g); *State v. Habern*, 945 S.W.2d 225, 226 (Tex.App.— Houston [1st Dist.] 1997, no pet.). We hold the indictments in the present case allege all of the elements of the offense of engaging in organized criminal activity, and they do so with sufficient particularity to put the Appellees on notice of the offense with which they were charged. *See State v. Edmond*, 933 S.W.2d 120, 128

(Tex.Crim.App.1996). The State's sole issue is sustained.

We **reverse** the trial court's order quashing the indictment and **remand** this case for further proceedings.

(PUBLISH)

### APPENDIX "A"

· · ·

... did then and there, with the intent to establish, maintain and participate in a combination and in the profits of a combination, conspire to commit the offense of unlawful delivery of a controlled substance, to-wit: Cocaine in the amount of 400 grams or more, and did then and there agree among themselves and with each other, to engage in conduct constituting said offense, to-wit: to intentionally and knowingly deliver a controlled substance, to-wit: Cocaine in the amount of 400 grams or more to JOHNNY HOWARD MAULDIN, and in pursuance of such agreement and in furtherance thereof, the said DEFENDANTS performed overt acts as follows:

1) On or about the 19th day of May, 1988, CHRIS YOUNG telephoned JOHNNY HOWARD MAULDIN in Smith County, Texas;

2) On or about the 19th day of May, 1988, JOHNNY HOWARD MAULDIN telephoned JESSE HAROLD MAULDIN in Smith County, Texas;

3) On or abut the 19th day of May, 1988, CHRIS YOUNG telephoned JOHNNY HOWARD MAULDIN in Smith County, Texas;

4) On or abut the 20th day of May, 1988, CHRIS YOUNG telephoned JOHNNY HOWARD MAULDIN in Smith County, Texas;

5) On or about the 20th day of May, 1988, CHRIS YOUNG telephoned

JOHNNY HOWARD MAULDIN in Smith County, Texas;

6) On or about the 20th day of May, 1988, JOHNNY HOWARD MAULDIN and JESSE HAROLD MAULDIN travelled by automobile from Smith County, Texas, to Dallas, Texas;

7) On or about the 20th day of May, 1988, CHRIS YOUNG, LAWRENCE ALFONSE BULLETTE, and ROSE LEE BANKS arrived at DFW airport on Delta Airlines from Los Angeles, California;

8) On or about the 20th day of May, 1988, JESSE HAROLD MAULDIN met CHRIS YOUNG at DFW airport;

9) On or about the 20th day of May, 1988, LAWRENCE ALFONSE BULLETTE and ROSE LEE BANKS obtained a room at the Marriott Hotel in Dallas, Texas;

10) On or about the 20th day of May, 1988, JESSE HAROLD MAULDIN and CHRIS YOUNG went to the LaQuinta Motel in Garland, Texas;

11) On or about the 20th day of May, 1988, JOHNNY HOWARD MAULDIN, JESSE HAROLD MAULDIN, CHRIS YOUNG, and LARRY RAY THOMAS travelled from the said LaQuinta Motel to the said Marriott Hotel;

12) On or about the 20th day of May, 1988, JOHNNY HOWARD MAULDIN, JESSE HAROLD MAULDIN, CHRIS YOUNG, and LARRY RAY THOMAS entered the said Marriott Hotel;

13) On or about the 20th day of May, 1988, JOHNNY HOWARD MAULDIN exited the said Marriott Hotel in the possession of 400 grams or more of cocaine, and accompanied by JESSE HAROLD MAULDIN;

14) On or about the 20th day of May, 1988, LARRY RAY THOMAS, took possession of said cocaine;

15) On or about the 20th day of May, 1988, LARRY RAY THOMAS transported said cocaine from Dallas, Texas, to Smith County, Texas;

. . .

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being inspected, because it is the opinion of this Court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be REVERSED and the cause REMANDED to the trial court FOR FURTHER PROCEEDINGS in accordance with the opinion of this Court; and that this decision be certified to the court below for observance.