TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00356-CR






Pablo Rodriguez, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 00-7101, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING






M E M O R A N D U M O P I N I O N




 Pablo Rodriguez appeals from his conviction for engaging in organized criminal
activity. See Tex. Pen. Code Ann. § 71.026(a)(1) (West Supp. 2004-05). Appellant entered a plea
of guilty. In accordance with a plea bargain agreement, punishment was assessed at eight years
deferred adjudication probation. In two issues on appeal, appellant contends that the trial court erred
in overruling a motion for continuance and in overruling his motion to quash the indictment. (1) We
affirm the trial court's judgment.

 Appellant notes that he is not challenging the sufficiency of the evidence, and so
recites the facts of the case in connection with each issue. We will do the same.

Discussion


Continuance


 This appeal arises from an organized crime prosecution of an alleged insurance fraud
ring that staged automobile accidents to generate insurance claims. This complex case involved
multiple defendants and a series of five indictments (the original indictment and four reindictments). 
Throughout the course of the proceedings, issues arose concerning the State's tardy delivery of
discovery materials. (2) The State indicated it intended to use hundreds of exhibits, comprised of 
thousands of pages of material and ultimately, forty-three tapes of witness interviews. Copies of
other exhibits were delivered in batches. Other exhibits included: a spreadsheet showing a detailed
listing of some forty accidents with the insurance company, claim number, who was involved and
the amount of loss and their accompanying insurance company files; lease documents for the offices
used; client lists; fingerprint cards; ledger books; checks made payable to the defendants; charts
documenting phone calls and money flow; scraps of paper noting settlement agreements; payment
stamps; and assorted Rolodexes.

 The State conceded it was three days late in the delivery of the final discovery. These
problems culminated in the court's admonition to the prosecution at the final pre-trial hearing that
"somehow . . . you are going to have to make this stuff available. I don't know what it's going to
take. We've been doing this for a year." The court also expressed its concern that arrangements had
already been made with the law school to try the case there and "I can't just shut it off like hot and
cold water. I can't do that." The court refused to grant a continuance. In his first issue, appellant
contends that the trial court erred in denying his motion for continuance.

 A criminal action may be continued on written motion "upon sufficient cause shown,"
but the continuance "may only be for as long as necessary." See Tex. Code Crim. Proc. Ann. art.
29.03 (West 1989). All motions for continuance must be in writing and "sworn to by a person
having personal knowledge of the facts relied on for the continuance." Id. arts. 29.03, 29.08. The
trial court's ruling on a motion for continuance is reviewed under an abuse of discretion standard. 
Coleman v. State, 481 S.W.2d 872, 873 (Tex. Crim. App. 1972). To establish an abuse of discretion,
the defendant must show that he was actually prejudiced by the denial of his motion. See Vasquez
v. State, 67 S.W.3d 229, 240 (Tex. Crim. App. 1995); Heiselbetz v. State, 906 S.W.2d 500, 511 (Tex.
Crim. App. 1995).

 The State first argues that error was not preserved. Because it appears that appellant
intended to adopt co-defendant Lloyd Dunn's motion, we will assume for the purposes of argument
that error was preserved (3) and analyze whether the denial of the continuance prejudiced the defendant.
Appellant argues that he was harmed because the failure to grant the continuance in essence
compelled appellant's guilty plea, rendering that plea involuntary. He urges that counsel's lack of
preparation time would have forced counsel into a position in which he would have been ineffective
as a matter of law.

 The record shows that appellant pleaded guilty after jury selection had begun. 
Counsel stated that he "didn't know until twenty minutes ago that [appellant] would take the plea
bargain." The record reflects the proper admonishments concerning the plea. Appellant stated that
he made the plea freely and voluntarily. Punishment was assessed in accordance with the agreement.

 Admonishments are a prima facie showing that the plea was knowing and voluntary. 
Cox v. State, 156 S.W.3d 599, 602 (Tex. App.--Tyler 2004, pet. ref'd). Once a defendant has
attested to the voluntary nature of the plea, he bears a heavy burden at any subsequent hearing to
contest voluntariness. Pena v. State, 132 S.W.3d 663, 666 (Tex. App.--Corpus Christi 2004, no
pet.). The defendant challenging the plea has the burden to show that he entered the plea without
understanding the consequences of his actions and thus was harmed. Id. If appellant is claiming that
he was harmed by ineffective assistance of counsel, he must show counsel's alleged deficiencies
caused the plea to be involuntary. In other words, but for counsel's errors, the defendant would not
have pleaded guilty but would have insisted on going to trial. Ex parte Gray, 126 S.W.3d 565, 568-69 (Tex. App.--Texarkana 2003, pet. dism'd).

 Appellant did not file a motion for new trial to raise his contention that the plea was
involuntary or that counsel was ineffective. The record reflects that multiple other co-defendants
accepted the plea. Two defendants (4) proceeded to trial (without the continuance) and were acquitted. 
It is a logical inference that the preparation time was not so severely impacted by State delays in 
producing discovery that the court's failure to grant the continuance would have rendered counsel
"ineffective as a matter of law." Nothing in the record shows that appellant considered the denial
of the continuance as a factor in deciding to accept the plea; indeed, the acceptance seemed to
surprise appellant's trial counsel. This record on direct appeal does not reflect evidence that
overcomes the presumption that the plea was voluntary. See Ex parte Puente, 71 S.W.3d 340, 344 
n.14 (Tex. Crim. App. 2002) (defendant may file 11.07 writ of habeas corpus and offer proof on
issue of voluntariness). Accordingly, we overrule appellant's first issue.


Motion to Quash


 In his second issue, appellant contends that the trial court erred when it overruled his
motion to quash the indictment. (5) Appellant complains that count one of the indictment charging that
he engaged in organized criminal activity did not provide adequate notice because the allegations
concerning the incorporated offense of theft were not specific enough.

 Count one (6) of the sixteen-page indictment alleged that appellant and approximately
twenty-eight other co-defendants "with the intent to establish, maintain, and participate in a
combination and in the profits of a combination" that consisted of three or more of the named
defendants and seven others conspired to commit the offense of theft of $200,000 or more by
agreeing with each other that they would engage in conduct that constituted the offense. The
indictment then listed eighty-seven overt acts that these co-defendants committed in furtherance of
that agreement.

 The overt acts section of the indictment described the formation of a chiropractic
clinic for the purpose of generating medical bills for insurance claims arising out of staged motor
vehicle wrecks. The indictment then described other steps in the scheme: opening a law office to
service claims from these accidents, preparing false documents to obtain driver's licenses, and
soliciting individuals to participate in staged motor vehicle collisions to generate insurance claims. 
The indictment alleged that Victor Cuevas, one of the conspirators, and others obtained insurance
policies to cover the participants in the collisions, paid each individual involved in the collision in
exchange for their interest in the insurance claim, and paid each co-conspirator a per-person rate for
each individual they solicited to participate in these wrecks.

 The indictment alleged that the conspirators solicited individuals who had been in
wrecks to seek treatment at the chiropractic clinic and seek representation at certain law offices,
including that of appellant. It specifically alleged that appellant agreed with Cuevas to provide legal
representation to individuals who had been in staged car accidents. For each individual "successfully
solicited," appellant received 16.67% of the proceeds from Cuevas. As part of the plan, the victims
were referred to medical clinics also involved in the scam. Appellant agreed to pay the full medical
bills submitted, to lease Cuevas office space and to allow Cuevas to represent himself as appellant's
legal assistant in negotiations of motor vehicle claims. Appellant later authorized Eric Arriola (a/k/a
Eric Rios) to take over for Cuevas and use appellant's name and bar number to operate an Austin
law office with Cuevas in appellant's name. This office handled approximately 100 motor vehicle
accident insurance cases.

 The indictment enumerated multiple accidents in which appellant represented
individuals who had participated in staged collisions, especially the so-called "swoop and squat"
collisions. (7) For example, appellant represented three individuals who participated in a staged
automobile collision involving a rental vehicle on September 27, 1994. This claim settled for
approximately $16,864.95. In another, appellant represented three solicited individuals who
participated in a "swoop and squat" collision on November 6, 1996. Appellant negotiated a
settlement for approximately $26,694.00 with another insurance company. The indictment
enumerated enough accidents with their accompanying settlement amounts to aggregate over the
$200,000 alleged. The indictment then went on to describe the expansion of the scheme to El Paso. When the adequacy of the indictment is a question of law, the district court's ruling
is subject to de novo review. State v. Moff, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); State v. McCoy, 64 S.W.3d 90, 92 (Tex.
App.--Austin 2001, no pet.). When reviewing the denial of a motion to quash, the appellate court
must first determine if the notice given was sufficient. If it was, the court's inquiry ends; if not, the
court examines the record to determine the impact of the deficiency on the appellant's defense. See
Crum v. State, 946 S.W.2d 349, 359 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd).

 A defendant must be given notice before trial of the "nature and cause" of the
accusation against him, and that notice must be given with sufficient clarity and detail to enable the
defendant to anticipate the State's evidence and prepare a proper defense to it. U. S. Const. amend.
VI; Tex. Const. art. I, § 10; Garcia v. State, 981 S.W.2d 683, 685 (Tex. Crim. App. 1998). Thus,
an indictment must allege all the facts and circumstances necessary to establish all the material
elements of the offense charged, using plain and intelligible language. Garcia, 981 S.W.2d at 685.

 A motion to quash should only be granted when the language concerning the
defendant's conduct is so vague or indefinite as to deny him effective notice of the acts he allegedly
committed. DeVaughn v. State, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988); Crum, 946 S.W.2d at
359. In general, an indictment that tracks the language of the penal statute will be legally sufficient; 
the State need not allege facts that are merely evidentiary in nature. DeVaughn, 749 S.W.2d at 67;
State v. Rivera, 42 S.W.3d 323, 329 (Tex. App.--El Paso 2001, pet. ref'd); see also Beck v. State,
682 S.W.2d 550, 554 (Tex. Crim. App. 1985). The indictment is read as a whole to determine
whether it sufficiently charges an offense. DeVaughn, 749 S.W.2d at 67. Thus, the notice provided
by the indictment may be included in the charging paragraph and/or in the allegations of overt acts. 
See State v. Mauldin, 63 S.W.3d 485, 489 (Tex. App.--Tyler 2001, pet. ref'd); Woods v. State, 801
S.W.2d 932, 934 (Tex. App.--Austin 1990, pet. ref'd). In some cases, due process requirements
with regard to notice may be satisfied by methods other than the language in the charging instrument. 
See Moff, 154 S.W.3d at 603; Kellar v. State, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003).

 An indictment charging conspiracy to commit a felony need not allege the intended
offense with the particularity necessary in an indictment charging the commission of the intended
offense. Smith v. State, 781 S.W.2d 418, 420 (Tex. App.--Houston [1st Dist.] 1989, no pet.). An
indictment alleging the essential elements of conspiracy, specifying each conspirator involved and
the overt acts committed in furtherance of the conspiracy, is adequately specific. Id. (citing United
States v. Willis, 583 F.2d 203, 207 (5th Cir. 1978)).

 When the indictment tracks the language of the appropriate subsections of penal code
section 71.02, it adequately charges the defendants with the offense of engaging in organized crime
and the trial court does not err in refusing to quash the indictment. Gemoets v. State, 116 S.W.3d
59, 73 (Tex. App.--Houston [14th Dist.] 2001, no pet.); Crum, 946 S.W.2d at 359-60; Childress v.
State, 807 S.W.2d 424, 431 (Tex. App.--Amarillo 1991, no pet.); Smith, 781 S.W.2d at 420. In an
organized crime case, the State need not allege the manner and means by which the underlying theft
was committed. Crum, 946 S.W.2d at 359-60 (citing Lucarion v. State, 658 S.W.2d 835, 837 (Tex.
App.--Houston [1st Dist.] 1983, no pet.)); see also Gemoets, 116 S.W.3d at 72. Also, in an
organized crime case, when the indictment alleges that the thefts committed by the defendants while
participating in the combination occurred over a period of time between two dates, this language
provides sufficient notice of the date on which the continuing offense of theft took place. See
Gemoets, 116 S.W.3d at 72 (citing Crum, 946 S.W.2d at 360).

 A recent trilogy of cases raising issues similar to the instant case arose out of a
comparable scheme in the Houston area. Appellant Gemoets was charged with engaging in
organized criminal activity by committing theft of over $200,000 from five insurance companies
between October 9, 1993, and January 19, 1995. Id. at 63. The scheme involved the staging of
automobile accidents. Gemoets treated patients from these staged accidents. Id. Gemoets
contended that the trial court should have overruled the indictment because it was insufficiently
specific concerning the manner and means of each specific incident, any specific actions by appellant
that constituted theft, facts surrounding each incident of theft, names of all co-conspirators, and any
overt acts performed by appellant or other co-conspirator. Id. at 71-72.

 The court first noted that in an organized crime case, the State need not allege the
manner and means by which the underlying theft was committed and overruled appellant's
contention that the indictment needed to specify the manner and means of each incident of theft. Id. 
The court also noted that unless a fact is essential to notice, the indictment need not plead the
evidence relied upon by the State. Because the indictment tracked the language of the statute, it
adequately charged appellant with the offense of engaging in organized crime. Id. The court also
held that the allegation of dates between October 9, 1993, and January 19, 1995, sufficiently alleged
the dates on which the continuing offense of theft occurred. Id. The appellate court overruled
appellant's challenge to the trial court's overruling of the motion to quash. Id. at 73. See also Tan
Kien Tu v. State, 61 S.W.3d 38 (Tex. App.--Houston [14th Dist.] 2001, pet. ref'd) (same indictment
for co-conspirator of Gomoets); Jarnigan v. State, 57 S.W.3d 76 (Tex. App.--Houston [14th Dist.]
2001, pet. ref'd) (same).


Application


 The gravamen of appellant's complaint is that the indictment gave him inadequate
notice of the offense alleged. Specifically, appellant contends that the allegations concerning the
incorporated crime of theft were not specific enough, arguing that count one merely states,
"[C]onspire to commit the offense of theft of $200,000 or more, by agreeing with each other that
they would engage in conduct that constituted said offense . . . ." However, appellant's argument
would have us stop reading count one before reaching the specific allegations enumerated in the
overt acts section. See Woods, 801 at 420 (notice may be in charging paragraph or allegations of
overt acts). Count one, read as a whole, gave appellant notice of the offense against which he had
to prepare a defense: the creation of false claims to collect wrongfully payments from insurance
companies. It gave multiple specific incidents of false collisions, the names (often aliases) of the
conspirators involved, and the amount that was extracted from the insurance company and tracked
the language of the appropriate subsections of penal code section 71.02. Crum, 946 S.W.2d at 359-60. (8)

 The indictment in this case is substantially the same as the indictments in the trio of
Houston cases. See Gemoets, 116 S.W.3d at 59; Tan Kien Tu, 61 S.W.3d at 38; Jarnigan, 57 S.W.3d
at 76. We agree with those cases, and hold the trial court did not err in failing to quash the
indictment. We overrule appellant's second issue.

Conclusion



 We have held that appellant did not demonstrate harm from the denial of the
continuance and did not show that the trial court abused its discretion in overruling his motion to
quash. Having overruled both of appellant's issues, we affirm the judgment of the trial court.



 

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear


Affirmed


Filed: July 14, 2005


Do Not Publish

1. Appellant's first appeal was dismissed for want of jurisdiction as untimely. See Rodriguez v.
State, No. 03-02-023-CR (Tex. App.--Austin Jan. 31, 2002). He received permission for an out-of-time appeal. The trial court certified appellant's right to appeal adverse rulings on pre-trial motions. 
See Tex. Code Crim. Proc. Ann. art. 44.02; Tex. R. App. P. 25.2, 26.2.
2. The State contends that it had an "open file" policy and did, by letter, inform opposing counsel
that the material was available for their inspection. The discovery delivery times were complicated
by the multiple defendants being tried in two different groups.
3. We note that trial counsel "adopted" co-defendant Dunn's motion on the day of trial. However,
after the court told appellant's trial counsel that the court would allow any necessary recesses to
review material during trial, but would not continue the case, appellant's trial counsel made no
further objection. Dunn's trial counsel, now appellant's appellate counsel, persisted in his objection.
4. Although he did not represent appellant at trial, appellate counsel represented Dunn, one of the
co-defendants who was acquitted.
5. The State notes that appellant has been unable to locate trial counsel's motion to quash the fifth
indictment. The State agrees that appellant sufficiently demonstrated preservation by adopting his
co-defendant's motion to quash in his argument at trial.
6. The parties discuss only count one of the indictment, the count to which appellant pleaded guilty. 
Count two of the indictment alleged theft and was dismissed.
7. A "swoop and squat" refers to a collision in which drivers intentionally cause rear-end motor
vehicle collisions involving innocent parties. The "squat" vehicle pulls in front of the target; the
"swoop" vehicle then pulls in front of the "squat" vehicle, which brakes suddenly, usually resulting
in the target vehicle rear-ending the squat vehicle. Rupp's Insurance & Risk Management Glossary 
available at http://www.insurance.cch.com/ripps/swoop-and-squat.htm.
8. Unlike State v. Moff, 154 S.W.3d 599 (Tex. Crim. App. 2004), involving an indictment for
misapplication of fiduciary property, this indictment details particular acts on which the State relied. 
It did not require the defendant to "gather evidence and prepare a defense" for each credit card and
cash transaction over a seven-year period without knowing which transactions the State alleged were
illegal. Id. at 603.