Opinion filed October 16, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed October 16,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00143-CR 

                                                    __________

 

                                    JASON ARREDONDO, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 106th District Court

 

                                                        Dawson
County, Texas

 

                                                  Trial
Court Cause No. 07-6655

 



 

                                                                   O
P I N I O N

Jason
Arredondo was indicted for sexual assault, aggravated sexual assault, and
engaging in organized criminal activity (EOCA).  Arredondo pleaded guilty to
sexual assault but not guilty to the remaining allegations.  The jury convicted
him of aggravated sexual assault and EOCA and assessed his punishment at thirty
years confinement for each offense.  We affirm the judgment regarding the
aggravated sexual assault, and we reverse the judgment regarding the EOCA
conviction and render a judgment of acquittal on that charge.








                                                              I.
Background Facts

This
incident arises out of a party involving minors, alcohol, and illegal drugs.  
Ultimately, one of the minor girls passed out, and two young men sexually
assaulted her while she was unconscious. 

The
victim, C.B., was fifteen years old.  She and her friend, J.T., intended to go
out drinking.  J.T. spoke with a friend, and they agreed to contribute money to
buy alcohol for a party.  C.B. brought AIce@ (an enhanced form of
methamphetamine) with her to the party, and once there she also contributed
money to purchase cocaine.  C.B. drank alcohol and used drugs at the party. 
She eventually began feeling uncomfortable and attempted to call another
friend, but he did not answer his phone.  C.B. then became dizzy, went to a
bedroom, and lay down on the floor. 

C.B.=s next memory was when she
awoke at eight or nine the following morning.  Her lower back hurt, and she had
no shoes.  Several people were asleep in the living room.  They told her that
she had left during the night with J.G. and had come back a few hours later
without her shoes.  When C.B. got home, she called J.G.   He denied coming to
the party.  C.B. then talked to her dad.  He took her to the hospital in Lamesa
and then to University Medical Center in Lubbock.  A doctor examined C.B. and
told her that he found sperm during her vaginal exam.  The doctor also found
small superficial abrasions on C.B.=s
left wrist and at the six o=clock
position of her vaginal area.  C.B. tested positive for amphetamines, cocaine,
and marihuana, but no date rape drug.

Detective
Larry Flenniken, with the Lamesa Police Department, investigated this
incident.  He interviewed Arredondo and started by asking Arredondo if he knew
why the police wanted to speak with him.  Arredondo replied that it was because
of what others were saying about him in reference to a girl at a party. 
Arredondo acknowledged being at the party but claimed that he went there to
look after his cousin, M.G., because he did not want her associating with his
friends.  Arredondo said that there was a white girl at the party, that she was
messed up, and that she offered him drugs, but he claimed that he said no and
that he left the party around midnight.








Detective
Flenniken told Arredondo that he did not believe him because of what he had
heard from others.  Arredondo changed his story.  He said that the white girl
offered him drugs and showed him something that looked like a rock.  He knew
that it was not cocaine but did not know what it was.  Later, someone told him
that the girl was messed up, that she had defecated on herself, and that
everyone was laughing at her.  Arredondo claimed that he left the party after
this.

Detective
Flenniken told Arredondo that he still did not believe him because of his other
information.  Arredondo eventually admitted that he had lain down on top of the
girl but claimed that it was all a joke and that he did not do anything or
remove his clothing.  He claimed that M.G. was cheering him on and that she and
P.C. kicked C.B. in the face.  Arredondo agreed to write out a statement. 
After Detective Flenniken read it, he told Arredondo that he had DNA evidence. 
Arredondo changed his story again and said that, after playing like he was
having sex with C.B., he went back to the bedroom and they did have sex. 
Arredondo provided Detective Flenniken with a DNA sample.  That sample was sent
to a DPS lab for testing.  Arredondo=s
sample was consistent with DNA found on C.B.=s
panties and vaginal swabs.

                                                                       II.
Issues

Arredondo
challenges his conviction with two issues.  Arredondo contends that the
evidence is legally and factually insufficient to sustain his conviction for
aggravated sexual assault because there was no evidence that he acted in
concert with anyone and that the evidence is legally and factually insufficient
to sustain his conviction for EOCA because there was no evidence of his intent.


                                                            III.
Standard of Review

To
determine if the evidence is legally sufficient, we review all of the evidence
in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Jackson
v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). The factfinder is the
sole judge of the credibility of the witnesses and the weight to be given their
testimony.  Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App.
1992). The factfinder may choose to believe or disbelieve all or any part of
any witness=s
testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).








To
determine if the evidence is factually sufficient, the appellate court reviews
all of the evidence in a neutral light. Watson v. State, 204 S.W.3d 404,
414 (Tex. Crim. App. 2006).  Then, the reviewing court determines whether the
evidence supporting the verdict is so weak that the verdict is clearly wrong
and manifestly unjust or whether the verdict is against the great weight and
preponderance of the conflicting evidence.  Id. at 414-15. 

                                                                   IV.
Discussion

 A. 
Aggravated Sexual Assault.

A
person commits sexual assault if they intentionally or knowingly cause the
penetration of the sexual organ of a child by any means.  Tex. Penal Code Ann. ' 22.011(a)(2)(A) (Vernon
Supp. 2008).  AChild@ is defined as a person
younger than seventeen years of age who is not the actor=s spouse.  Tex.
Penal Code Ann. '
22.011(c)(1) (Vernon Supp. 2008).  A violation of this provision is a second
degree felony.  Tex. Penal Code Ann.
' 22.011(f) (Vernon
Supp. 2008). 

Sexual
assault becomes aggravated sexual assault and a first degree felony if the
person acts in concert with another who commits a sexual assault against the
same victim during the course of the same criminal episode.  Tex. Penal Code Ann. ' 22.021(a)(2)(A)(v) (Vernon
Supp. 2008).  The State alleged, and the jury found, that Arredondo committed
aggravated sexual assault because he acted in concert with Jerry Ray
Maldonado.  Arredondo argues that the evidence is insufficient to sustain his
conviction because of the lack of evidence that he and Maldonado acted in
concert.

Tex. Penal Code Ann. ' 22.021 (Vernon Supp. 2008)
does not define the term Ain
concert.@  Therefore,
we construe it in accordance with its plain meaning unless that would lead to
an absurd result that the legislature could not have possibly intended.  Boykin
v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).  In ascertaining a
word or term=s plain
meaning, we read it in context and apply the rules of grammar and usage.  Ex
parte Hood, 211 S.W.3d 767, 773 (Tex. Crim. App. 2007).  We initially
consult dictionary definitions and note that legal dictionaries are especially
appropriate for ascertaining the meaning of a legal term.  Lopez v. State,
253 S.W.3d 680, 685 (Tex. Crim. App. 2008).  








AConcert@ is defined in the
dictionary as Aagreement
in design or plan; union formed by mutual communication of opinion and views.@  Merriam-Webster=s
Collegiate Dictionary 257 (11th ed. 2003).  Parties act in concert when
they act together.  Id.  Other publications define acting in concert as
planning together or acting in harmony or conjunction.  See Peters v. State,
No. 04-97-01026-CR, 1999 WL 498203, at *3 (Tex. App.CSan Antonio July 14, 1999, pet. ref=d) (citing Webster=s
Third New International Dictionary 470 (1981)).  Older versions of Black=s Dictionary defined Aconcert@ to mean:  AA person is deemed to act
in concert when he acts with another to bring about some preconceived result.@  See, e.g., Black=s Law
Dictionary 262 (5th ed. 1979).  Concert, however, is no longer a defined
term.  The most analogous defined word or phrase is Aconcerted action,@ which is defined as A[a]n action that has been planned, arranged,
and agreed on by parties acting together to further some scheme or cause, so
that all involved are liable for the actions of one another.@  Black=s Law
Dictionary 283 (7th ed. 1999).  

These
definitions indicate that two or more individuals act in concert if their
conduct is preplanned or if they act conjunctively to achieve a common
purpose.  There is no evidence that Arredondo and Maldonado planned to rape
C.B. or to otherwise put her in a position where they could take advantage of
her.  The State points to evidence that Arredondo went to C.B.=s house to pick her up for
the party and that he knew alcohol would be provided to minors; but, this is no
evidence of a plan or agreement.  Arredondo was a passenger in R.C.=s car when C.B. and J.T.
were picked up.  There is no evidence that Maldonado even knew C.B. would be at
the party and no evidence that either Arredondo or Maldonado played a part in
acquiring the alcohol, inviting C.B. to the party, or making the alcohol
available to C.B.

The
State next points to evidence that, after C.B. passed out, Arredondo raped her
while everyone watched, laughed, and cheered him on.  When he finished,
Maldonado raped C.B., and others physically assaulted her.  Those still at the
house the next morning tried to cover up the incident by lying to C.B. about
what had happened.  The State characterizes these events as a gang rape and as
evidence that Arredondo and Maldonado acted together.  This may be sufficient
evidence to establish that the people who encouraged Arredondo or Maldonado
committed some criminal activity,[1] but we
disagree that it is evidence that Arrendodo and Maldonado acted in concert to
sexually assault C.B.








The
legislature distinguished sexual assault and aggravated sexual assault by
requiring proof of concerted activity rather than some other form of
exacerbating conduct such as serial action. The State=s principal evidence, however, shows that
Arredondo acted alone.  He apparently saw C.B. lying on the floor unconscious
and, without any prior encouragement or assistance from anyone else, decided to
rape her.  Witnesses saw him walk into the bedroom, take down his pants, and
start having sex.  When he finished, he announced to the group, AI had to do what I had to
do.@  After that, he
walked into the kitchen.  Maldonado then went into the bedroom and raped C.B. 
No witness testified that Arredondo said anything to encourage Maldonado to
rape C.B., that he facilitated Maldonado=s
assault by restraining C.B., or that he otherwise forced her to have sex with
Maldonado.[2]

Finally,
the State argues that Maldonado=s
plea of guilty is evidence that he and Arredondo acted in concert.  After the
State rested, Arredondo called Maldonado as a witness.  Maldonado testified
that he had sex with C.B. but denied acting in concert with Arredondo.  On
cross-examination, Maldonado testified that he was in the penitentiary for
aggravated sexual assault.  He acknowledged signing a judicial confession
admitting that he was guilty as charged.  He then read his indictment to the
jury.  That indictment alleged the same aggravated sexual assault offense as
Arredondo=s
indictment.  Maldonado agreed that he had judicially confessed to acting in
concert with Arredondo.

Arredondo
did not object to this testimony or request a limiting instruction.  The State
contends, therefore, that it became part of the general evidence and that it
could be used as proof to the full extent of its rational persuasive power,
citing Turro v. State, 950 S.W.2d 390, 400 (Tex. App.CFort Worth 1997, pet. ref=d).  The State concludes
that a rational juror could determine that Arredondo and Maldonado acted in
concert based upon this confession.  We agree that Maldonado=s plea is some evidence and
that a rational juror could have determined Arredondo=s guilt based upon it.  








The
next question is whether Maldonado=s
plea is factually sufficient evidence.  Because the only evidence directly
supporting the verdict is Maldonado=s
plea, we must determine whether a rational juror could find Arredondo guilty
based upon this plea in light of the other conflicting evidence.  Watson,
204 S.W.3d 414-15.  While we view the evidence in a neutral light, we must give
the evidence whatever weight and probative value it could rationally convey to
a jury.  See Moff v. State, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004). 
Ultimately, determining whether a particular witness was being truthful or was
covering for himself or someone else is for the jury to decide.  See Tex. Code Crim. Proc. Ann. art. 36.13
(Vernon 2007) (jury is the sole judge of the credibility of the witnesses and
the weight to be given their testimony). 

A
rational juror could consider that Maldonado subjected himself to incarceration
by pleading guilty and could conclude that he would not plead guilty to an
offense he did not commit.  That juror could discount Maldonado=s subsequent trial
testimony as an effort to cover for a friend.  A rational juror could consider
that Arredondo=s story
changed multiple times to conform to what the police knew and that the other
witnesses had reason to minimize the party=s
events because of their potential criminal exposure.  Finally, a juror could
consider the events in context.  C.B. was raped successively by Arredondo and
Maldonado while others watched and cheered.  This would be completely
consistent with concerted action and with Maldonado=s plea.  Because a rational juror could find
the plea credible and the other testimony less than credible, we cannot say
that the jury=s
verdict is against the great weight of the conflicting evidence.  Issue One is
overruled.  

B. 
Organized Criminal Activity. 

Tex. Penal Code Ann. ' 71.02 (Vernon Supp. 2008)
provides that a person commits an offense if, with the intent to establish,
maintain, or participate in a combination, he commits or conspires to commit
one of several enumerated offenses including sexual assault.  This requires
more than the intent to commit an enumerated offense; the State must prove the
defendant=s intent to
establish, maintain, or participate in a combination.  Hart v. State, 89
S.W.3d 61, 63 (Tex. Crim. App. 2002).  Combination is defined as Athree or more persons who
collaborate in carrying on criminal activities.@ 
Tex. Penal Code Ann. ' 71.01(a) (Vernon 2003). 
The participants need not know each other=s
identity, and the combination=s
membership may change from time to time.  Id. Arredondo argues that the
evidence is legally and factually insufficient to sustain his EOCA conviction
because there was no evidence of his intent to establish, maintain, or
participate in a combination.








Direct
evidence of the defendant=s
intent is not required.  A jury may infer intent from any facts that tend to
prove the combination=s
existence, including the defendant=s
words, acts, and conduct, and the method of committing the enumerated offense. 
Manrique v. State, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Myers,
J., concurring).  It is permissible to infer an agreement among a group working
on a common project when each person=s
action is consistent with realizing the common goal.  McGee v. State,
909 S.W.2d 516, 518 (Tex. App.CTyler
1995, pet. ref=d). 
Proof of a single ad hoc effort, however, is insufficient.  See Smith v.
State, 36 S.W.3d 908, 910 (Tex. App.CHouston
[1st Dist.] 2001, pet. ref=d)
(evidence that defendant was involved in a one-time transaction is insufficient
to establish an organized criminal activity).  The combination must intend to
engage in a continuing course of criminal activity.  Nguyen v. State, 1
S.W.3d 694, 697 (Tex. Crim. App. 1999).  

The
State points to evidence that, during the party, multiple criminal statutes
were violated by multiple people to establish the requisite combination. 
Minors were undisputably involved in the purchase and consumption of alcohol
and illegal drugs, C.B. was sexually assaulted twice while others watched and
laughed, her shoes were stolen, and several of the party-goers attempted to
cover up the assaults.  We agree with the State that multiple statutes were
violated and that three or more people were involved in most of the night=s illegal activities; but,
there was no evidence that this party was anything more than a one-time social
gathering or that Arredondo intended to establish, maintain, or participate in
a combination.








Evidence
of multiple criminal violations alone does not establish a combination.  For
example, in Ross v. State, 9 S.W.3d 878, 880 (Tex. App.CAustin 2000, pet. ref=d), the defendant became
enraged when he was inadvertently cutoff on the interstate by another driver. 
He and his friends then engaged in a series of threatening actions including
attempting to force the victim=s
car into the center median.  When she escaped and exited the interstate, the
defendant and his friends blocked her car at a red light.  They then forced her
out of her car and physically beat her.  The State argued that the series of
continuing assaults beginning on the interstate and culminating in the final
attack at the red light satisfied Nguyen=s
continuing course of criminal activities requirement and proved that the
defendant was a participant in a combination.  The Austin Court disagreed,
holding that proof of a series of actions that were all part of the same
criminal episode was insufficient to establish a combination engaged in a
continuing course of criminal activities.  Ross, 9 S.W.3d at 882.             The
Austin Court cited the statute=s
legislative history in support of this conclusion.  Id.  Section 71.01
originated in the Senate as Senate Bill 151 and contained the current
definition of combination except that it required five rather than three individuals.[3] 
The House proposed defining combination simply as five or more people who
engage in a criminal conspiracy as defined by Tex.
Penal Code Ann. '
15.02(a), (b) (Vernon 2003).  A conference committee rejected this definition
in favor of the Senate version.  The court concluded, therefore, that the
statute requires more than a three-person conspiracy but instead requires a
combination working together in a continuing course of criminal activities.  Id. 
(citing Nguyen v. State, 977 S.W.2d 450, 455 (Tex. App.CAustin 1998), aff=d, 1 S.W.3d 694 (Tex.
Crim. App. 1999)).  We note that, in the four legislative sessions subsequent
to the Nguyen decision, the legislature has not amended the definition
of Acombination@ and, therefore, presume
that it agrees with this construction.  See F.F.P. Operating Partners,
L.P. v.  Duenez, 237 S.W.3d 680, 692 (Tex. 2007) (concluding that the
legislature had accepted judicial construction of a statute by reenacting it
without altering the operative provision).








We
recognize that even a single criminal offense can support a conviction.  See
Nguyen, 977 S.W.2d at 455 (Athe
proscribed action may be the first actual crime committed by a member of the
combination@). 
However, it is not the number of criminal actions that is determinative but
whether the intent to engage in continuous criminal activities was shown.  For
example, in Mayfield v. State, 906 S.W.2d 46, 50-51 (Tex. App.CTyler 1995, pet. ref=d), a combination was shown
when the evidence indicated a well-orchestrated scheme involving multiple
levels of dealers, transfers of drugs and cash between them, and a central
source of supply.  In State v. Mauldin, 63 S.W.3d 485, 489 (Tex. App.CTyler 2001, pet. ref=d), the court held that an
agreement could be inferred from a coordinated interstate effort to deliver a
large amount of cocaine over 1,500 miles.  In Barber v. State, 764
S.W.2d 232, 236-37 (Tex. Crim. App. 1988), a combination existed when the
defendants obtained operating capital, leased property, moved oil storage tanks
to the leased property, purchased  trucks, hired drivers, opened bank
accounts, and made arrangements to sell stolen oil.  In Dowdle v. State,
11 S.W.3d 233, 236-37 (Tex. Crim. App. 2000), a combination was shown when
multiple individuals participated in a well-planned burglary, met after the
burglary to discuss further plans, combined separate loads of stolen property,
and then traveled to another location to locate the stolen property and
incriminating evidence.

Unlike
these examples, however, there was no evidence of intended continuity and thus
no evidence of a combination.  The evidence is that a group of young people
gathered informally for a party and that during the course of their party
several people individually made poor decisions that led to unfortunate
consequences.  While those poor decisions also involved multiple criminal
violations, there is no evidence that this was anything more than a single
criminal episode.  The Texas Court of Criminal Appeals noted that combination
requires proof of more than working jointly to commit a crime but requires
proof of continuity.  Nguyen, 1 S.W.3d at 696-97.  That proof was simply
not present in this case.

Even
if we are mistaken, there is no evidence that Arredondo intended to establish,
maintain, or participate in the combination.  We have previously noted that the
State=s principal
evidence shows that Arredondo acted alone when he assaulted C.B.  While a
rational juror could consider Maldonado=s
plea as evidence of aggravated sexual assault, that plea does not support an
EOCA conviction because Maldonado did not plead guilty to EOCA and because his
plea only establishes that he and Arredondo acted in concert.  Section 71.01
requires three or more people to establish a combination.  The evidence,
therefore, is legally insufficient to support Arredondo=s EOCA conviction, and Issue Two is sustained.

                                                                     V.
Holding

The
judgment of the trial court by which Arredondo was convicted and sentenced for
the offense of aggravated sexual assault is affirmed.  The judgment regarding
Arredondo=s EOCA
conviction is reversed, and judgment is rendered acquitting him of that charge.


 

 

RICK STRANGE

JUSTICE

October 16, 2008

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,


McCall, J., and, Strange, J.









     [1]For example, a
person is criminally responsible as a party to an offense when they are
physically present at the commission of an offense and encourage the commission
by words or other agreement.  Burdine v. State, 719 S.W.2d 309, 315 (Tex.
Crim. App. 1986).





     [2]Cf. Vasquez v.
State, No. 07-01-0042-CR, 2002 WL 753490, at *5 (Tex. App.CAmarillo Apr. 29, 2002, pet. ref=d) (evidence sufficient to establish defendant acted in
concert with others when several men in car with one fourteen-year-old female
talked about raping her, took her to the country, restrained her on the ground,
and sexually assaulted her vaginally and anally multiple times); Peters,
1999WL 498203, at *3 (evidence sufficient to show the defendant acted in
concert with others because he kept the victim from escaping when she was
pulled into the apartment, was present when she was assaulted immediately after
being forced into the  apartment, and had sex with the victim after the others
in the group had done so and while they watched).





     [3]Section 71.01(a)
was amended in 1989 to require only three participants.  See Act of May
26, 1989, 71st Leg., R.S., ch. 782, ' 1,
1989 Tex. Sess. Law Serv. 782 (Vernon).